529 So.2d 59 (1988)
Cloynise Johnson LACHNEY, Plaintiff-Appellee,
v.
Joseph Lawrence LACHNEY, Sr., et al., Defendant-Appellant.
No. 87-570.
Court of Appeal of Louisiana, Third Circuit.
June 22, 1988.
Writ Denied November 11, 1988.
*60 J.W. Pucheu, Ville Platte, for plaintiff-appellee.
Donald J. Launey, Jr., Gary J. Ortego, Ville Platte, for defendant-appellant.
Before DOMENGEAUX, STOKER and KING, JJ.
KING, Judge.
The issue presented by this appeal is whether or not monthly disability benefit payments received by a former spouse after divorce, pursuant to an employer-provided disability insurance policy, should be classified as community property where the former spouse qualified for and began receiving benefits prior to the termination of the community.
Cloynise Johnson Lachney (hereinafter plaintiff), filed suit against her former husband, Joseph Lawrence Lachney, Sr. (hereinafter defendant), and Aetna Life Insurance Company (hereinafter Aetna) seeking to be recognized as the owner of an one-half interest of defendant's monthly disability benefit payment and for reimbursement of one-half of the amounts received by him since July 23, 1982, the date her suit for judicial separation was filed. After a trial on the merits, the trial court rendered judgment in favor of plaintiff, awarding her one-half of the monthly disability benefits received by defendant from July 23, 1982 to March 6, 1987, the date a judgment was signed in this suit. The judgment further provided that, from the date of the rendition of said judgment, Aetna was to withhold one-half of all of defendant's monthly disability benefit payments and to pay these amounts directly to plaintiff each month. Defendant timely appeals. We reverse and render judgment.

*61 FACTS
The facts were stipulated to be as follows: Mr. and Mrs. Lachney were married on December 27, 1952, and during their marriage, they acquired community property and debts. On July 23, 1982 Mrs. Lachney filed suit for separation from bed and board in the Thirteenth Judicial District Court. Later, on September 20, 1982, she filed a supplemental and amending petition demanding a divorce and a partitioning of the community property along with other relief.
A judgment of divorce was rendered on October 26, 1982 ordering Mr. Lachney to pay alimony of $250.00 per month to Mrs. Lachney.[1] The divorce judgment also ordered that a notary public be appointed to take an inventory of the community property and that it be partitioned. A document making a partial settlement and liquidation of the former community was executed by Mr. and Mrs. Lachney on December 14, 1982. The entire record in the divorce suit was filed into evidence in this suit by joint stipulation of the parties.
Prior to the filing of the original suit for separation, defendant was employed by the Cabot Corporation (hereinafter Cabot) at their plant north of Ville Platte in Evangeline Parish, Louisiana. He worked for the corporation from December 15, 1966 through October 27, 1977, when he became disabled and commenced receiving disability payments under the terms of a group long term disability insurance policy purchased by Cabot from Aetna. At trial it was stipulated that Aetna had paid under its policy monthly disability benefits direct to defendant since July 23, 1982, when the original suit for separation was instituted.
An affidavit filed by Aetna shows that on October 27, 1977, defendant began receiving long term disability payments pursuant to its policy in the amount of $641.67 per month less a workman's compensation payment offset of $281.66 per month. In December, 1977, defendant began receiving full monthly benefits of $641.67 after Aetna was notified that defendant was no longer receiving Louisiana Worker's Compensation Benefits. The monthly disability payment was increased to $660.92 in October, 1978 due to a cost of living increase provided in the policy. From October 1978 to present, defendant has received $660.92 a month from Aetna and will continue to receive the sum until age 65, the termination of his disability, or his death, whichever occurs first.
Plaintiff filed this suit on March 16, 1984, alleging that Aetna and defendant were indebted jointly, severally, and in solido unto her for one-half of all monthly disability benefits paid to defendant since July 23, 1982, which plaintiff claims as community property.
Aetna filed an answer on behalf of defendant and itself, and thereafter, filed a motion for partial summary judgment on November 12, 1985. On December 5, 1985, a consent judgment was rendered dismissing plaintiff's claim against Aetna, and reserving to plaintiff any and all rights she had against defendant. The judgment of dismissal of plaintiff's claim against Aetna was not appealed.
A trial on the merits was held on January 5, 1987 and, at its conclusion, the matter was taken under advisement. On February 25, 1987, the trial judge assigned written reasons for judgment in Open Court. The court made the following findings of fact supporting its decision:
"1. The policy was acquired during the community of acquets and gains then existing between the parties, and while it is true that no premium was paid by defendant Lachney, it was not a gratuity, but rather a benefit, an additional renumeration [sic] or compensation made to the employee, and thus community property.
2. While C.C. Arts. 2377 and 2431 were repealed in 1979, the rights herein claimed by plaintiff had vested, and since the court finds that they are substantive in nature, plaintiff cannot be deprived of property rights under the contract of insurance *62 acquired during the existence of the community of acquets and gains existing heretofore between the parties herein.
3. In view of the foregoing reasoning, plaintiff is entitled to one-half of the amount which defendant Lachney received from July 23, 1982, to the date of the rendition of the judgment in this case. C.C. Arts. 155 and 159.
4. From and after that date Aetna Life Insurance Company is to withhold one-half of all monthly disability benefit payments that defendant is entitled to, and to transmit that amount monthly to plaintiff...."
A written judgment was rendered and signed later on March 6, 1987. From this judgment defendant timely requested and was granted a devolutive appeal.

CLASSIFICATION OF DISABILITY BENEFITS
On appeal, defendant argues that the trial court erred in classifying the monthly disability benefits received by him beyond the date of filing of the separation suit (July 23, 1982) as community property and finding they represent additional remuneration or compensation made to him as an employee. He further asserts that the benefits represent a "gratuity" because the disability policy premiums were paid exclusively by Cabot and, therefore, the policy was not obtained through the efforts or skill of either spouse. In the alternative, he argues the payments are a substitute for the wages he is unable to earn because of his injury sustained while working for his employer, Cabot. The issue presented by this appeal appears to be res nova in Louisiana. While we are of the opinion that the Louisiana jurisprudence does not support a finding that disability income payments to an employee are a "gratuity," there is support in the Louisiana jurisprudence for treating the payments as a substitute for lost income attributable to the disability and, thus, its classification as separate property of the injured spouse after the dissolution of the marriage between the parties.

CODAL ARTICLES
In 1979, Book III of the Louisiana Civil Code dealing with matrimonial regimes, consisting of Articles 2377 to 2431, was revised primarily to eliminate the head and master management system of pre-revision law;[2] but, in the revision few changes were made to the principles of classification of property. Those changes which were made were designed to achieve more gender neutral articles in conformity with the newly incorporated concepts of equal management. Under current law, as well as under the pre-revision law, the property of married persons is divided into community and separate, and classification is made according to principles which are based upon the time and manner of acquisition of the property.
Under pre-revision law, LSA-C.C. Articles 2334 and 2402 were the two main articles dealing with classification of property.
LSA-C.C. Article 2334 provided in part:
"Art. 2334. The property of married persons is divided into separate and common property.
Separate property is that which either party brings into the marriage, or acquires during the marriage with separate funds, or by inheritance, or by donation made to him or her particularly.
The earnings of the wife when living separate and apart from her husband although not separated by judgment or court, her earnings when carrying on a business, trade, occupation or industry separate from her husband, actions for damages resulting from offenses and quasi offenses and the property purchased with all funds thus derived, are her separate property.
Actions for damages resulting from offenses and quasi offenses suffered by the husband, living separate and apart *63 from his wife, by reason of fault on her part sufficient for separation or divorce, shall be his separate property.
Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared...."
LSA-C.C. Article 2402 provided:
"This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase. But damages resulting from personal injuries to the wife shall not form part of the community, but shall always be and remain the separate property of the wife and recoverable by herself alone; `provided where the injuries sustained by the wife result in her death, the right to recover damages shall be as now provided for by existing laws.'"
These articles are particularly relevant in deciding the case at hand because they were in effect during defendant's employment with Cabot from 1966 to 1977, the year in which he became disabled and started to receive these disability payments; however, we do not believe that the result we reach would be any different under the revised classification articles.[3]

LOUISIANA JURISPRUDENCE
After an examination of the Louisiana jurisprudence, we have not found any cases directly resolving the issue presented by this appeal. Recent scholarly commentaries suggest that in attempting classification of disability payments an examination should be carefully made to determine whether the benefits represent deferred compensation in the nature of retirement or pension income and, if so, then under Sims v. Sims, 358 So.2d 919 (La.1978) and T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1975) the benefits should be classified as community to the extent attributable to years of service performed during the existence of the community.[4] In the present case, this would result in classifying every monthly disability payment as community property, because defendant's employment with Cabot began and terminated during the existence of the community. On the other hand, if the disability payments do not qualify as deferred *64 compensation in the nature of retirement or pension income, then they should be classified in accordance with the approach used by courts in allocating tort damage awards and worker's compensation benefits.
Under the latter approach, a pro rata method has been applied to determine time of acquisition, and hence, what part of the payments are separate or community property.[5] In applying the pro rata approach to classify incorporeal property rights, no one event is singled out and made dispositive of classification; instead, the focus is on the nature of the property rights over a period of time. This allows an award of tort damages or worker's compensation benefits to be classified partly community and partly separate property of the injured spouse. Using this approach, courts have classified tort damage awards and worker's compensation payments as community property to the extent attributable to community expenses or lost community earnings and as separate property to the extent they represent compensation for a particular injury. We are of the opinion this method of analysis will result in a disposition that is most consistent with the jurisprudence, codal articles, and concepts of equity.
Before we address the question of whether the payments at issue are analogous to deferred compensation in the nature of retirement or pension income or more similar to tort damages and worker's compensation payments, we must first determine whether the disability payments made to defendant by Aetna constitute pure gratuities. If the answer is in the affirmative, the disputed benefits are his separate property in their entirety and there will be no need to proceed further with our analysis.
In T.L. James & Co., Inc. v. Montgomery, supra, the Supreme Court specifically rejected the argument that "fringe benefits" are mere gratuities even when instituted unilaterally by the employer. Addressing this issue, the Supreme Court held that employer contributions into benefit plans are:
"[A] reward by the company to promote loyal and efficient service on the part of the employee. The plans are, moreover, an inducement to the employees to remain in the service of the company to enjoy the benefits of the plans promised. In short, the contribution of the employer is not a purely gratuitous act, but is in the nature of additional remuneration to the employee who meets the conditions of the plan. The employer expects and receives something in return for his contribution, while the employee, earns the reward. The benefits to the employee are, therefore, earned income-property within legal contemplation." (Citations omitted.) T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 at 841 (La. 1975).
The application of this rationale to the case at hand leads us to conclude that the disability insurance policy, obtained for the employees of Cabot through union negotiations in 1972, was not a gratuity but was additional compensation designed to induce the Cabot employees to remain in the service of the company. The fact that defendant did not pay any premiums, or otherwise make any other contributions, is of no consequence. As to the finding that the disability payments were not a gratuity, we are in agreement with the trial court; nevertheless, this determination does not necessarily lead to the conclusion that the disability benefits are community property. Further inquiry must be made to determine whether the disability insurance policy was intended to provide a source of retirement or pension income or was obtained by Cabot to compensate an injured employee for lost earnings in the event the employee *65 was incapacitated due to a serious illness or injury.
The contract of insurance between Aetna and Cabot, bearing Policy No. LTD-34500, was signed May 28, 1973 and took effect on January 1, 1974. Under the terms of the policy, Cabot is listed as the insured policyholder and the plant employees are classified as beneficiaries. Under the terms of the policy, an employee is entitled to receive 60% of his monthly rate of basic earnings if he becomes "totally disabled," which is defined as being "unable, solely because of disease or accidental bodily injury, to work at any gainful occupation for which he is reasonably suited because of education, training or experience." Article II, Section 2 of the policy describes in detail under what circumstances a "period of total disability" is deemed to commence and terminate. It provides as follows:
"B. A `period of total disability' of an employee shall be deemed to commence on the later to occur of
(1) the first day that the employee is totally disabled, and
(2) the thirty-first day immediately preceding the date the employee was, during the period of total disability, first seen and treated personally by a physician in connection with the disease or injury which caused such disability;
and the period of total disability shall be deemed to terminate, unless otherwise specifically provided for in this Article II, on the earliest to occur of
(a) the date the employee is no longer `totally disabled' as defined in Section 1 of this Article II;
(b) the date upon which the employee starts work at any occupation for compensation or profit, other than work in connection with an approved rehabilitation program;
(c) the date the employee fails to furnish proof of the continuance of total disability, or refuses to be examined, when required in accordance with Article VI;
(d) the date the employee ceases to be under the care of a physician;
(e) the end of the calendar month in which the employee attains the age of sixty-five years; and
(f) the date of the employee's death."
After a review of the terms of the policy and the testimony elicited during the trial, it is evident that the monthly disability payments do not represent deferred compensation such as retirement and/or pension benefits. The policy had no cash value nor accrued or redemption value; in fact, if an employee reached the age of 65 years without suffering "total disability," he would never receive any benefits under the policy.[6] Even if an employee became eligible for benefits under the terms of the policy, there still was no guarantee that payments would continue for any set length of time.
Defendant's own testimony further confirms this fact. He testified that payments for hospitalization insurance benefits and a retirement plan were deducted from his monthly paycheck on the fifteenth and last day of the month. In contrast, premiums for the disability insurance were neither deducted from his wages nor paid out of a joint community checking account by either spouse. Defendant further testified that he withdrew his accumulated retirement plan benefits after his injury and that the remainder of this sum was divided equally between him and the plaintiff pursuant to the settlement of community property ordered in the divorce suit. Defendant's testimony shows that retirement benefits were provided by Cabot in addition to the disability insurance, and that these were two distinctly different types of fringe benefits.
*66 Before disability payments were commenced in 1977, defendant was required to undergo a complete physical examination to confirm his disability, and, in order to maintain his eligibility, was required to submit to further yearly physical examinations. If at any time during the existence of the community, the defendant had returned to work or failed to meet Aetna's definition of "total disability," the monthly disability payments would have been terminated.
For these reasons we do not find that the disability payments made by Aetna, under the Cabot policy, to defendant were deferred compensation in the nature of retirement or pension income.
Having made the determination that the disability payments in question are not deferred compensation in the nature of retirement or pension income, we will examine Louisiana jurisprudence allocating tort damage awards and worker's compensation benefits after dissolution of a community, which we find are analogous in nature to the disability benefits paid to defendant in the instant case.
The leading case in this area is West v. Ortego, 325 So.2d 242 (La.1975). In West, supra, the Louisiana Supreme Court was presented with a similar issue, but in the context of a dispute over a husband's post-dissolution worker's compensation benefits. As in the case before us, the husband sustained a disabling industrial accident during the marriage. Prior to receipt of any compensation benefits, his wife filed suit for separation from bed and board. Shortly thereafter, the husband began receiving worker's compensation benefits. His wife then filed a petition for a temporary restraining order and preliminary injunction, alleging that all of the benefits he received were community property because the injury arose during the community regime. The trial court granted the preliminary judgment and declared her entitled to one-half of her husband's benefits, but only for that portion which had accrued prior to the dissolution of the community.
On appeal, this court affirmed the trial court judgment, as did the Supreme Court after writs were sought and granted. The Louisiana Supreme Court found that the situation presented by the facts was not contemplated by the legislature when they enacted Civil Code Articles 2334 and 2402 (now repealed). The court then invoked LSA-C.C. Art. 21 and applied concepts of "natural law and reason" to decide the case. The Supreme Court held that the worker's compensation benefits were the husband's separate property to the extent that they are paid to compensate him for post-community loss of earnings.
Generally, the pro rata classification approach used by the Supreme Court in West, supra, has also been used by Louisiana courts in allocating damage awards received after dissolution of the community when the husband was tortiously injured during the marriage. In Placide v. Placide, 408 So.2d 330 (La.App. 3 Cir.1981), the husband suffered from back problems and impotency after he was involved in an accident prior to the dissolution of his marriage. As a result of these injuries, he received a substantial tort damage award in a jury trial which took place after his wife filed a petition for separation. The jury verdict did not apportion the tort damage award and the wife argued that the entire proceeds were therefore community property. This court applied the rationale set out in West, supra, and made an apportionment of the tort damage award on the basis of equity. We observed that:
"The case of West v. Ortego, supra, dictates that we resort to equity to apportion monies acquired after dissolution of the community for damages awarded in compensation for an accident which occurred before the dissolution of the community when the award covers both pre-dissolution and post-dissolution losses. We find that there is sufficient evidence before us to permit an equitable apportionment of the damages awarded to appellant." Placide v. Placide, 408 So.2d 330, at page 333 (La.App. 3 Cir. 1981).
In Hall v. Hall, 349 So.2d 1349 (La.App. 4 Cir.1977), the wife sought a declaratory judgment to determine whether the amount *67 of a judgment in a tort suit, in favor of her husband, were part of the pre-existing community of acquets and gains. The wife contended that under Civil Code Articles 2334 and 2402 (now repealed), even though some of the damages awarded were to compensate her husband for future loss of wages, medical expenses, and pain and suffering, the entire sum was community property because the monies for settlement of the judgment was received ten days prior to the date on which she filed her divorce suit and, accordingly, prior to the dissolution of the community.
The trial judge relied on West, supra, and declared the portion of the funds representing lost wages prior to the date of the divorce judgment to be community property and the amount awarded for loss of future wages, which would have been earned after the termination of the community, was deemed to be the husband's separate property.
After the wife appealed the judgment, the Fourth Circuit reversed and held "where the actions for the husband's damages occur during the existence of the marriage, the money recovered is community property under Article 2334, unless it comes within the stated exceptions." Hall, 349 So.2d at 1352. The court apparently arrived at its decision by interpreting the solution in West, supra, to be restricted to situations in which payment of damages is received after the dissolution of the community.[7] The decision has been viewed as inconsistent with the principle in West,[8] and has not been followed in any subsequent cases.[9]

JURISPRUDENCE OF OTHER JURISDICTIONS
A survey of the jurisprudence of other community property states[10] reveals that some courts in these states have also made a distinction between disability pension and retirement benefits and payments made in lieu of wages under accident and disability policies for purposes of classification as to whether or not they were community property. California has adopted an approach allocating benefits paid both pre-community and post-community, pursuant to a disability insurance policy, similar to that followed by the Louisiana courts in apportioning tort damage awards and worker's compensation benefits.
In the California case of In Re Marriage of Saslow, 40 Cal.3d 848, 221 Cal.Rptr. 546, 710 P.2d 346 (Cal.1985), the California Supreme Court addressed the status of benefits from private disability insurance policies purchased with community funds.[11] There, the parties had been married 18 years and, during the marriage, the husband purchased three insurance policies payable upon his disability. The premiums were paid with community funds. While the parties were still married, the husband became permanently disabled because of chronic psychological problems and began to receive benefits payable under the policies. The wife argued that the benefits from the disability policies were community property and had to be divided equally between the parties upon dissolution of the community because the policies were purchased with community funds.
*68 The California Supreme Court applied the rationale articulated in its landmark disability case of In Re Marriage of Stenquist, 21 Cal.3d 779, 148 Cal.Rptr. 9, 582 P.2d 96 (1978), in which it addressed the status of a disability retirement pension,[12] and held:
"The approach taken by this court in Stenquist provides for the most equitable distribution of disability insurance benefits. This approach requires that the trial court treat disability benefits as separate property insofar as they are intended to replace postdissolution earnings that would have been the separate-property income of the disabled spouse, and treat the benefits as community property insofar as they are intended to provide retirement income.
As indicated, especially in cases like the instant one, the determination of the intent of the parties regarding the purpose of the benefits will not always be easy. However, trial court judges have extensive experience in making such difficult factual determinations. The task is not so formidable that a simple, but inequitable, rule would be preferable.
Apportionment of the benefits need not be arbitrary or speculative. The court may consider testimony of the spouses' intent, both at the time the disability insurance was originally purchased and at the times that decisions were made to continue the insurance in force rather than let it lapse. Absent evidence of actual intent, the court may ascertain a normal retirement age at which the disabled spouse would have been most likely to retire had no disability occurred.

* * * * * *
Although the end result may be inexact in many cases, this solution is likely to produce far less harm than a rigid holding that all proceeds from disability insurance policies are the separate property of the disabled spouse or, alternatively, that all proceeds are community property." (Footnote omitted.) In Re Marriage of Saslow, 40 Cal.3d 848, 221 Cal.Rptr. 546, at 551, 552, 710 P.2d 346, at 351, 352 (1978).

DECISION
Applying the principles of Louisiana law discussed above, as well as the rationale of Saslow, supra, and Stenquist, supra, we conclude that plaintiff had no vested interest in defendant's monthly disability payments received after the dissolution of their community which was stipulated by the parties to be on July 23, 1982. For this reason, all sums received by defendant subsequent to that date represent compensation for his post-community loss of earnings and are defendant's separate property. For this reason, the judgment of the trial court awarding plaintiff one-half of all sums received by defendant as disability payments from Aetna after July 23, 1982 is reversed, vacated and set aside. Aetna is hereby ordered, from the date of rendition of this judgment, to discontinue withholding one-half of defendant's monthly disability checks, and mailing said sums to plaintiff.
All costs of this appeal are taxed to plaintiff-appellee.
REVERSED AND RENDERED.
DOMENGEAUX, J., concurs and assigns reasons.
DOMENGEAUX, Judge, concurring.
I concur in the decision to reverse the Trial Judge's ruling because I feel that, although the result is supportable on the grounds as stated the contrary position is as equally supported by the Louisiana jurisprudence.
While no Louisiana case is dispositive of the case sub judice, the cases of T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1975), and Succession of Scott, 231 La. 381, 91 So.2d 574 (1956) lend support to the Trial Judge's ruling that the defendant's disability payments are community property. In Scott, the Court ruled that because the deceased's disability payments *69 made by the federal government were not "pure gratuities" to the deceased, they were considered part of the community that had formerly existed between the spouses. Therefore, the surviving widow was allowed to claim her community share of these payments.
In T.L. James, supra, the court had to determine whether a profit sharing plan and a retirement plan provided by the husband's employer (T.L. James) were community property or separate property of the employed spouse. Although different economic plans were at issue in T.L. James than the disability plan in this case, the Supreme Court again resolved the issue by looking to whether either plan was a gratuity on the part of the employer. Even though the employer entirely paid for the plans, both plans were held to be non-gratuities. The plans were considered "additional remuneration" such that when the employer contributed the funds for his employee during the existence of the employee's community regime, the community acquired the right to share in the ultimate proceeds.
An application of the T.L. James analysis to the case sub judice would make the disability plan in question community property as the right to acquire the plan vested during the existence of the community. However, the T.L. James rationale would, in probability, render as community any employer provided economic benefit plan and this may not be an equitable result. As noted in the majority's opinion, a more equitable solution would seem achievable by considering the nature of the property right rather than just considering its gratuitious nature and time of acquisition.
Since there is no definitive jurisprudence on point, we must make a policy decision that would provide the most desirable result. Because the disability payments were based on the defendant's work-related injury and because, generally, compensation of this type is the injured spouse's separate property, this decision holding these disability payments to be the defendant's separate property appears both equitable and correct.
However, because the Louisiana jurisprudence is open to interpretation and because the issue requires a policy decision that should be set forth by the High Court, I respectfully concur and request that the Supreme Court grant writs, if applied for, to fully consider all aspects of the question and decisively settle the issue.
NOTES
[1] The alimony award was later reduced to $110.00 in conformity with a judgment rendered on March 5, 1985 and signed on October 17, 1985.
[2] Act 709, approved July 20, 1979, 1979 La.Acts at 1857. The new law became effective January 1, 1980. Act 709 § 13, 1979 La.Acts at 1886.
[3] LSA-C.C. Articles 2338 and 2341 are the two principal property classification articles found in the current law. Community property is defined in Article 2338 as follows:

"The community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property under Article 2341; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property."
LSA-C.C. Article 2341 defines separate property as follows:
"The separate property of a spouse is his exclusively. It comprises: property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; property acquired by a spouse by inheritance or donation to him individually; damages awarded to a spouse in an action for breach of contract against the other spouse or for the loss sustained as a result of fraud or bad faith in the management of community property by the other spouse; damages or other indemnity awarded to a spouse in connection with the management of his separate property; and things acquired by a spouse as a result of voluntary partition of the community during the existence of a community property regime."
[4] See, e.g., Arruebarrena, Applying Louisiana's Community Property Principles to Pensions, 33 Loy.L.Rev. 24, 287-289 (1987); see generally, Comment, Classification of Incorporeal Movables, 42 La.L.Rev. 744 (1982); Van, Allocating Deferred Compensation in Louisiana, 38 La.L. Rev. 36, 42 (1977).
[5] The Louisiana Supreme Court first applied a pro rata method in T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1975), where the court held that the proceeds of pension and profit-sharing plans should be apportioned between the pre-existing community and the separate estate of the former spouse receiving them in the same proportions that the contributions made during the pre-existing community bear to the total contributions made during the entire period of time the former spouse made such contributions.
[6] In contrast, see Succession of Scott, 231 La. 381, 91 So.2d 574 (1956); Campbell v. Campbell, 474 So.2d 1339 (La.App. 2 Cir.1985), writ den., 478 So.2d 148 (La.1985); and Gilbert v. Gilbert, 442 So.2d 1330 (La.App. 3 Cir.1983), writ den., 445 So.2d 1231 (La.1984), where federal disability payments have been elected as a substitute for military retirement pay and the courts have held them to be community property to the extent earned by military service during the marriage.
[7] The court's holding was based on literal interpretation of the fifth paragraph in Article 2334 (now repealed), which provides as follows:

"Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared."
[8] See, Pascale, Matrimonial Regimes, The Work of The Louisiana Appellate Courts for the 1977-1978 Term, 39 La.L.Rev. 697, 701 (1979).
[9] Recent decisions under current Article 2344, which specifically address the classification and allocation of tort damage awards and worker's compensation benefits, have not followed the approach in Hall v. Hall, supra, but have instead followed the pro rata method used in West v. Ortego, supra. See e.g., Ellithorp v. Ellithorp, 509 So.2d 178 (La.App. 1 Cir.1987); Mead v. Mead, 442 So.2d 870 (La.App. 3 Cir.1983), writ denied, 445 So.2d 452 (La.1984).
[10] See generally Annot. 94 A.L.R.3rd 176, 222-229; 41 C.J.S., Husband and Wife § 471 (1944).
[11] In a footnote on page 348 of the opinion, the court summarized the jurisprudence of several other community property states relative to the issue in question and commented that other jurisdictions are not uniform in their characterization of disability benefits as community or separate property.
[12] The court's approach in Stenquist, supra, was adopted by our courts in Campbell v. Campbell, 474 So.2d 1339 (La.App. 2 Cir.1985), writ den., 478 So.2d 148 (La.1985).