671 So.2d 937 (1996)
Robert MERCER, Plaintiff-Appellant-Appellee,
v.
Jessica Carmichael MERCER, Defendant-Appellee-Appellant.
No. 95-1257.
Court of Appeal of Louisiana, Third Circuit.
April 3, 1996.
*938 Michael Hathorn Davis, Alexandria, for Robert Gary Mercer.
James J. Davidson III, Lafayette, for Jessica Carmichael Mercer.
Before THIBODEAUX, SAUNDERS and AMY, JJ.
SAUNDERS, Judge.
The issue raised by Mrs. Mercer in this appeal is whether the proceeds of a disability income policy purchased with community funds constitutes separate property following dissolution of the community. Additionally, Mr. Mercer asks that we review the finding of the trial court that Mrs. Mercer was entitled to alimony after divorce. We affirm.

FACTS
Plaintiff, Robert Mercer, and defendant, Jessica Carmichael Mercer, were married on August 16, 1980. Four children were born of the marriage. At the time of trial, they ranged in age from 5 to 12 years old. After a race to the courthouse in which both parties filed for divorce on January 19, 1994, on May 10, 1994, the parties filed a joint motion to terminate the community property regime, which the trial court signed. The judgment declared that the community of acquets and gains was terminated retroactive to January 19, 1994. On the same date, the parties partially partitioned their assets, with the exception of a disability income policy issued by the New York Life Insurance Company. The parties agreed to litigate the community or separate nature of the policy's proceeds at a future date.
Mrs. Mercer's appeal arises from the trial court's eventual determinations that the disability income insurance policy constituted Mr. Mercer's separate property. Mrs. Mercer contests the trial court's characterization of the policy. Meanwhile, Mr. Mercer argues that the trial court erred in awarding Mrs. Mercer $324.00 per month permanent *939 alimony. He maintains that Mrs. Mercer should be denied any permanent alimony whatsoever on the alternate bases of Mrs. Mercer's fault and ability to earn a living independent of his support.

DISABILITY INCOME POLICY
The first issue we address is whether or not monthly disability benefits payments received by a former spouse after divorce, on a disability insurance policy procured with community funds during the community, should be classified as community property, where the former spouse qualified for and began receiving benefits prior to the termination of the community.
It is conceded that the disability insurance policy was purchased with community funds prior to Mr. Mercer's disability and during the parties' marriage, and that Mr. Mercer began receiving benefits under the policy during the marriage. Mrs. Mercer argues that these facts alone mandate reversal of the trial court's conclusion that funds flowing from the policy following the couple's divorce belong to the community and not to her former spouse. The argument, concisely stated, is that the policy was purchased with community funds and that the policy's fruits should therefore belong to the community. This reasoning, while strongly rooted in civilian concepts, has not been followed by our court.
Disability payments, unlike retirement payments, present special problems. Brant v. Brant, 26,508 (La.App. 2 Cir. 1/25/95), 649 So.2d 111, citing Johnson v. Johnson, 582 So.2d 926 (La.App. 2 Cir.1991). In Lachney v. Lachney, 529 So.2d 59 (La. App. 3 Cir.), writ denied, 532 So.2d 764 (La.1988), this court, after weighing the conflicting lines of reasoning we face today, ultimately concluded that it is the nature of the benefits and not the source of premium payments that is determinative.
As stated by the court in Lachney, inquiry must be made to determine whether the disability benefits represent deferred compensation in the nature of retirement or pension income or compensation to an injured employee for lost earnings in the event the employee becomes incapacitated due to serious illness or injury.
Arnaud v. United Broth, of Carpenters, 577 So.2d 184, 186 (La.App. 1 Cir.), writ not considered, 580 So.2d 369 (La.1991). Judge Domengeaux, a member of this Court's panel to sit on Lachney, took pains to amplify the legal divide presented by the issue raised by Mrs. Mercer presently, even explicitly asking that the Louisiana Supreme Court grant writs and provide guidance on the question. While we may echo Judge Domengeaux's sentiments, we are compelled to follow the established jurisprudence of this court.
The Supreme Court's denial of writs in Lachney and the other appellate cases in this opinion, at least in the absence of contrary positive law, suggests that a disability insurance policy's acquisition with community property does not necessarily lead to the conclusion that the disability benefits are community property. Brant, 649 So.2d 111; Lachney, 529 So.2d 59.
The record before us demonstrates that the disability policy in this case had no cash surrender value, required periodic medical examinations for the continuation of benefits, and provided for termination of benefits upon Mr. Mercer's death or attainment of the age of 65. Thus, it would appear that the disability payments made to Mr. Mercer following termination of the community were substitutions for wage losses. Brant, 649 So.2d 111; Lachney, 529 So.2d 59. They did not constitute deferred compensation in the nature of retirement or pension income to which Mrs. Mercer has a legally recognized claim.
The fact that Mr. Mercer was not injured in the course and scope of his employment does not affect the outcome of these proceedings. Damages received by a spouse or former spouse due to personal injuries, even those sustained during the community, constitute his separate property. La.Civ.Code art. 2344.
Damages due to personal injuries, including workman's compensation benefits, sustained during the existence of the community by a spouse are separate property. LSA-C.C. Art. 2344; Comment a, LSA-C.C. Art. 2344; Roge v. Roge, 604 So.2d 721 (La.App.2d Cir.1992). The non-injured *940 spouse does not have an interest in the portion of the award designed to compensate the injured spouse for the loss of earnings accruing after termination of the community property regime. Although this portion of the award would be classified as community property during the existence of the regime, it is classified as the separate property of the injured spouse upon termination of the community. Comment b, LSA-C.C. Art. 2344; West v. Ortego, 325 So.2d 242 (La.1975).
Brant, 649 So.2d at 114.
Thus, the disputed benefits constitute his separate property, whether they were intended to replace Mr. Mercer's lost wages or to compensate him for his strictly personal injuries. Cf., T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1976); West v. Ortego, 325 So.2d 242 (La.1975); Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956). See also, Sims v. Sims, 358 So.2d 919 (La.1978).

ALIMONY AFTER DIVORCE
Art. 112. Alimony after divorce; permanent periodic; lump sum
A. (1) When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse,... permanent periodic alimony....
La.Civ.Code art. 112. (Emphasis added.)
As with the preceding community property question, the parties could not amicably resolve between themselves whether Mrs. Mercer was entitled to alimony. Mr. Mercer argues that the $324.00 monthly permanent alimony award to Mrs. Mercer should be reversed on two alternate grounds, first on account of her alleged abandonment of the matrimonial domicile and, second, due to her alleged ability to provide for herself.
As Mr. Mercer correctly points out, abandonment by a spouse occurs when that spouse withdraws from the common dwelling, without lawful cause, and constantly refuses to return. Harrington v. Montet, 93-984 (La.App. 3 Cir. 3/2/94), 634 So.2d 1302.
The question is whether Mrs. Mercer had lawful cause to leave the family hearth. Her position is that she did not abandon the marriage, but that she was driven from it by her husband's harassment, guarded control of the purse strings, and Mrs. Mercer's fear for her physical safety due in part to her husband's proclivity for personal weaponry. Each of these charges were denied by Mr. Mercer, who contended that Mrs. Mercer lacked justifiable cause for leaving the domicile.
The evidence yields no basis for convincing us that Mrs. Mercer (or Mr. Mercer, for that matter) was at fault for the dissolution of the couple's marriage. Rather, the record suggests that irreconcilable differences had emerged incrementally over a considerable period before escalating to mutual distrust and concluding with the couple's feeling that living together was no longer preferable to living apart. The evidence does not so clearly suggest that Mrs. Mercer's departure was at all unilateral; to the contrary, her leaving seems to have been the terminal last inevitable symptom of the couple's long ripening irreconcilable differences. For instance, when Mrs. Mercer sporadically mentioned the possibility of the need for the two to part company, Mr. Mercer did not contest the notion, but encouraged it by offering on several occasions to open the door for his wife. Thus, the fact that it was Mrs. Mercer who left the domicile and not Mr. Mercer seems more to have resulted from the fact, of which Mrs. Mercer was frequently reminded, that the family home, located on Mr. Mercer's separate property, did not belong to the community. We hold that Mrs. Mercer did not abandon the community.
In the alternative, Mr. Mercer argues that Mrs. Mercer, who previously worked part-time, is fully capable of fending for herself in the job market. To be entitled to alimony after divorce, a party not at fault must additionally be without sufficient means to support himself or herself. LeBlanc v. LeBlanc, 362 So.2d 568 (La.1978).
This argument too is unpersuasive. A trial court's determination of the economic needs of a claimant spouse is not to be disturbed on appeal unless clearly wrong. Chi v. Pang, 94-284 (La.App. 3 Cir. 10/5/94), 643 So.2d 411.
*941 La.Civ.Code art. 112(A)(2) provides certain factors which must be considered in fixing such alimony; among these are the recipient spouse's earning capacity, time requirement for acquiring appropriate education, training, or employment, and the health and age of the parties and their dependent children to whom they owe an obligation.[1] According to its written reasons, the trial court's primary interest in awarding permanent alimony to Mrs. Mercer was to enable her to complete her education so as to be in a better position to jointly provide for the couple's four children, who ranged in age from six through twelve on the date of the hearing. The record before us leads us to believe that Mrs. Mercer is well along in her educational journey to financial independence, and we decline to derail her from achieving this laudable objective by contributing to her destitution. Accordingly, we find no clear error on the part of the trial court and affirm the trial court's alimony award to Mrs. Mercer.

DECREE
In light of the foregoing, the judgment of the trial court is affirmed, at Mr. Mercer's costs.
AFFIRMED.
AMY, J., concurs.
NOTES
[1] According to La.Civ.Code art. 112(A)(2) and (3):

In determining the entitlement and amount of alimony after divorce, the court shall consider:
(a) The income, means, and assets of the spouses;
(b) The liquidity of such assets;
(c) The financial obligations of the spouses, including their earning capacity;
(d) The effect of custody of children of the marriage upon the spouse's earning capacity;
(e) The time necessary for the recipient to acquire appropriate education, training, or employment;
(f) The health and age of the parties and their obligations to support or care for dependent children; and
(g) Any other circumstances that the court deems relevant.
(3) In determining whether the claimant spouse is entitled to alimony, the court shall consider his or her earning capability, in light of all other circumstances. (Emphasis added.)