730 So.2d 443 (1999)
Gary BORDES
v.
Roselyn Zito BORDES.
No. 98-C-1004.
Supreme Court of Louisiana.
April 13, 1999.
*444 Richard M. Michalczyk, Metairie, for Applicant.
Bernadette R. Lee, Edith H. Morris, New Orleans, Suzanne E. Ecuyer, Mandeville, William H. Cook, Jr., Shreveport, for Respondent.
JOHNSON, Justice.[*]
We granted certiorari in this case to review the court of appeal's ruling that the disability retirement benefits paid by the Parochial Employees' Retirement System of Louisiana are community property. For reasons discussed below, we reverse the judgment finding the benefits paid by the Parochial Employees' Retirement System of Louisiana are community property.

FACTS AND PROCEDURAL HISTORY
Mr. Gary Bordes and Ms. Roselyn Zito Bordes were married on December 5, 1981. The parties were divorced after ten years of marriage by a petition filed on May 8, 1991. One son was born to this union and he lives with Mr. Bordes. Prior to their marriage, Mr. Bordes was employed with the Water Department of Jefferson Parish. This employment, which began May 1, 1974, continued until November 17, 1994 when Mr. Bordes was declared totally disabled due to aplastic anemia and avascular necrosis of his hips. As a result of his total disability, Mr. Bordes began receiving disability retirement benefits from the Parochial Employees' Retirement System of Louisiana ("Parochial System") and the Employees' Retirement System of Jefferson Parish ("Jefferson System"). He receives $1,310.24 from the Parochial System and $503.69 from the Jefferson System, for a total of $1,813.93 per month.
On October 5, 1995, Ms. Bordes filed a petition to partition the community of acquets and gains along with a sworn detailed descriptive list. A trial on the merits of the petition was held on December 17, 1996. Before the trial began, the parties entered into a consent judgment stipulating to the following matters:
(1) That there will be a judgment rendered in favor of Ms. Bordes and against Mr. Bordes for one-half of the amount received from cashing in any community U.S. Savings Bonds from May 8, 1991 through December 17, 1996, the trial date of the partition.
(2) That there would be judgment in favor of Mr. Bordes and against Ms. Bordes for one-half of the principal reduction of the mortgage on her separate property residence paid during the marriage.
(3) That the parties would enter into a Qualified Domestic Relations Order ("Q.U.A.D.R.O") reflecting Ms. Bordes' 23% interest in the retirement plan of Mr. Bordes from both the Parochial System and the Jefferson System, to be effective May 17, 2012.
(4) That the parties have settled a claim regarding the patio and roof in favor of Mr. Bordes and against Ms. Bordes in the amount of $500.00 and agreed to divide the furniture and fixtures in kind.
The parties also stipulated to the following dates:
(1) The date of employment of Mr. Bordes with Jefferson Parish is May 1, 1974.
(2) The date of marriage is December 5, 1981
(3) The date of termination of the community is May 8, 1991.
(4) The date of Mr. Bordes' disability and termination of employment is November 17, 1994.
(5) The date Mr. Bordes would be eligible for normal retirement is May 17, 2012.
After the stipulations, the only issue remaining for trial was the classification of the disability retirement benefits received by Mr. Bordes since November 17, 1994. The trial court determined that the disability retirement *445 benefits are based on the total years of service and the maximum salary earned during the highest three years of payment. Therefore, the benefits are deferred compensation which Mr. Bordes has elected to receive via early retirement and as such they are community assets. The court also ordered that the community interest of Ms. Bordes in the disability retirement benefits be determined using the formula established in Sims v. Sims, 358 So.2d 919 (La.1978).
On appeal, the Fifth Circuit Court of Appeal determined that there was sufficient evidence to support the trial court's conclusion that Ms. Bordes was entitled to share in the benefits received from the Parochial Employees' Retirement System. The court found the benefits from the Parochial System were deferred compensation within the meaning of T.L. James & Company, Inc. v. Montgomery, 332 So.2d 834 (La.1975); Sims v. Sims, 358 So.2d 919 (La.1978); and Hare v. Hodgins, 586 So.2d 118 (La.1991). However, the Jefferson Parish benefits were distinguished from the Parochial benefits. The court found the Jefferson benefits were not based on the actual years employed, but on a formula which allows additional years to be added; the benefits were only available upon disability; and Ms. Bordes would not receive any portion of the benefits remaining after Mr. Bordes' death because she would not be a surviving spouse. The portion of the trial court judgment finding the Jefferson System benefits to be community funds was reversed. In all other respects, the trial court judgment was affirmed. Bordes v. Bordes, 97-967 (La.App. 5th Cir. 1/27/98), 707 So.2d 471. We granted Mr. Bordes' writ to review the correctness of this ruling that the benefits paid by the Parochial Employees' Retirement System are community assets. Bordes v. Bordes, 98-1004 (La.7/2/98), 721 So.2d 897.

DISCUSSION
It is well settled in Louisiana that a former spouse is entitled to a pro rata share of the retirement benefits of a member spouse to the extent the retirement benefits were attributable to the former community. Frazier v. Harper, 600 So.2d 59 (La.1992); Sims v. Sims, 358 So.2d 919 (La.1978). The issue presented by this case is whether disability retirement benefits constitute deferred compensation in the nature of retirement or pension income so as to be classified as community property.
The courts of appeal have addressed the classification of disability benefits on numerous occasions. See Hyde v. Hyde, 96 1725 (La.App. 1st Cir. 6/26/97); 697 So.2d 1061, writ denied, 97-1987 (La.11/7/97); 703 So.2d 1274; Mercer v. Mercer, 95-1257 (La.App. 3rd Cir. 4/3/96); 671 So.2d 937; Brant v. Brant, 26,508 (La.App. 2nd Cir. 1/25/95); 649 So.2d 111; Arnaud v. United Brotherhood of Carpenters and Joiners of America, 577 So.2d 184 (La.App. 1st Cir.), writ not considered, 580 So.2d 369 (La.1991); Johnson v. Johnson, 532 So.2d 503 (La.App. 1st Cir. 1988); Lachney v. Lachney, 529 So.2d 59 (La.App. 3rd Cir.), writ denied, 532 So.2d 764 (La.1988).
In Lachney v. Lachney, 529 So.2d 59, the Third Circuit Court of Appeal considered a disability insurance policy available through the employee-spouse's employer. The employee spouse had not paid for the disability insurance coverage and the policy had no cash surrender value. Further, if the employee reached the age of sixty-five (65) without suffering a disability, the employee would never receive any benefits under the policy. The court held that the disability payments made under the policy were not deferred compensation, but were in the nature of tort damage awards and worker's compensation benefits. Accordingly, the court determined that the employee's spouse had no interest in the employee's monthly disability benefits received after dissolution of the community.
When presented with another opportunity to determine the appropriate classification of disability benefits, the Third Circuit again held that disability payments under a policy purchased with community funds were the separate property of the claimant spouse. Mercer v. Mercer, 671 So.2d 937, 939-940. The court reasoned that since the disability policy had no cash surrender value, required periodic medical examinations for continuation of the benefits, and provided for termination of the disability benefits upon the claimant's death or the attainment of the age *446 of sixty-five (65); the disability payments made pursuant to the policy were substitutions for wage losses and did not constitute deferred compensation in the nature of retirement or pension income to which his spouse had a legally recognizable claim.
The Second Circuit Court of Appeal followed the same line of reasoning as the Third Circuit when it decided Brant v. Brant, 649 So.2d 111. The court determined that disability payments, which represented compensation a claimant would have earned if not for his illness, were not deferred income and required classification of those benefits in accordance with the approach used by the courts in allocating tort damage awards and worker's compensation benefits.
In Johnson v. Johnson, 532 So.2d 503, the First Circuit held that disability benefits received by an employee spouse pursuant to La.Rev.Stat. Ann. 33:2113.1 were community assets. The disability benefits were paid from a fund comprised, in part, of employee contributions; the payment was a percentage of the employee's average compensation; and the actual percentage was based on the number of years of service of the injured employee. Upon retirement, the accumulated contributions of the employee, together with an amount taken from the pension account, were placed in a reserve account for the payment of future retirement benefits. The court explained that the employee's right to receive compensation for his disability was based entirely on his contributions to the fund from community earnings and his years of service. Accordingly, the court determined that the disability benefits were community property.
More recently, the First Circuit concluded that disability benefits received by an employee-spouse until he reaches age sixty-five (65) are not deferred compensation and are not in the nature of retirement benefits. Hyde v. Hyde, 697 So.2d 1061. The court found that the employee-spouse did not make any contribution to the disability plan whatsoever. If he had continued to work without suffering from a disabling condition, he would not have been entitled to receive any disability benefits and if he was able to return to work, his monthly disability benefits would be discontinued. Further, at retirement age (65 years old), the employee-spouse would receive unreduced retirement benefits, a proportionate interest of which would belong to his spouse. Therefore, the court found that the disability benefits received by the employee-spouse as a result of his disability were more representative of compensation for lost earnings due to an inability to work and, as such, were his separate property. Hyde, 697 So.2d at 1065.
The case sub judice involves disability retirement benefits from two separate retirement systems, the Parochial Employees' Retirement System of Louisiana and the Employees' Retirement System of Jefferson Parish. The Court of Appeal determined that benefits paid by the Employees' Retirement System of Jefferson Parish are the separate property of Mr. Bordes. Ms. Bordes did not seek review of the correctness of this determination, therefore, the only issue before this Court is the proper classification of the benefits paid by the Parochial Employees' Retirement System of Louisiana.

PAROCHIAL EMPLOYEES' RETIREMENT SYSTEM OF LOUISIANA
Mr. Bordes applied for disability retirement with the Parochial System on November 17, 1994. A member of the Parochial System is eligible to retire and receive a disability benefit if he has at least five years of creditable service, is not eligible for normal retirement, and suffers disability. La. Rev.Stat. Ann. 11:1943. Mr. Bordes has 20.46575 years of creditable service with Jefferson Parish, he has been disabled by aplastic anemia with avascular necrosis of both hips, and he is not eligible for normal retirement.[1] Having met the conditions for disability *447 retirement benefits, Mr. Bordes is required to undergo a medical examination every year for the first five years of disability and once every three years thereafter until he attains normal retirement age. La. Rev.Stat. Ann. 11:1934(A). If he engages in or is able to engage in gainful occupation, his disability retirement benefits will be terminated. La.Rev.Stat. Ann. 11:1934(B). In order to insure that he is not able to engage in gainful employment, Mr. Bordes is required to submit an annual income statement to the Parochial System.
As an employee of the Water Department, Mr. Bordes was eligible to participate in the Jefferson Parish and the Parochial Retirement Systems. Membership in the two retirement systems was a benefit of employment with the Water Department. He made contributions to both retirement systems and the Water Department made contributions as well. Mr. Bordes' contributions went into an annuity savings account and his employer's contributions went into the general fund of the pension plan. According to Mr. A.C. Tynes, Secretary-Manager of the Jefferson System, the annuity savings account accumulates until the employee starts receiving a monthly benefit. The funds in the annuity savings account are exhausted first, then payments are made from the general fund.
Mr. Bordes elected to receive the maximum allowance from the Parochial System. This election gives Mr. Bordes the maximum disability retirement allowance payable for life, with no provisions for a survivor benefit. If Mr. Bordes should die before having received in retirement benefits the amount he contributed to the system, the balance will be refunded in a lump-sum payment to his designated beneficiary. The disability payment is determined by multiplying the years of creditable service by three percent and then multiplying that number by the employee's highest total earnings for any 36 successive months. This calculation gave Mr. Bordes a total monthly benefit of $1,813.93, of which $1,310.24 is paid by the Parochial System. The remaining $503.69 is paid by the Employees' Retirement System of Jefferson Parish.
The normal retirement age for Mr. Bordes is age sixty. When he reaches this age, his disability retirement benefit will automatically become a normal retirement benefit. Unlike the disability insurance policies reviewed by the Courts of Appeal in Mercer, 671 So.2d 937; Brant, 649 So.2d 111; and Lachney, 529 So.2d 59, the benefits payable under this plan are not really disability benefits. Rather the significance of disability under this retirement plan is that disability triggers the early entitlement to retirement benefits which, but for the disability, would not be payable until normal retirement age. Further, the Parochial System plan does not provide for termination of monthly disability retirement benefits when the employee reaches normal retirement age. To the contrary, when Mr. Bordes reaches normal retirement age the amount of payment does not change, nor does the source of payment. The only changes are the discontinuance of the income statement requirement and the periodic medical examination. However, like the aforementioned plans, Mr. Bordes' monthly disability retirement benefits will be terminated if he is able to return to work.
The purpose of paying benefits under a retirement plan is different when the benefits are payable because the employee spouse becomes disabled than when the benefits are payable because the employee spouse reaches normal retirement age. When the divorced employee spouse receives benefits because of disability, the benefits are paid in lieu of income that would otherwise be the employee spouse's separate property. Basing the classification of benefits upon the purpose of the payment of the benefits is fair and equitable, and provides ease of administration.[2] When the employee spouse becomes *448 disabled, the benefits replace the working wages he or she can no longer earn. On the other hand, the non-employee spouse can continue to earn (and keep) one hundred percent of the wages he or she was earning when the employee spouse became disabled. Awarding a share of disability retirement benefits to the non-employee spouse who does not need to replace wages lost because of inability to work, while reducing the amount of benefits payable to the disabled spouse who has such a need, is contrary to the purpose of a disability feature in a retirement plan.
While the source of Mr. Bordes' disability retirement benefits is the same as his normal retirement benefits, this alone does not make the payments more representative of retirement income. Other factors support classifying the benefits as compensation for lost earnings. They include the fact that the payments are conditioned on Mr. Bordes' continuing disability, that he is required to undergo periodic medical examinations and submit annual income statements while receiving the benefits, and the benefits automatically convert to a normal retirement benefit upon his reaching retirement age. If the disability retirement benefits were normal retirement benefits, there would be no changes when the employee reaches normal retirement age. It is clear that Mr. Bordes' disability retirement benefits are more akin to compensation for lost earnings due to serious injury or illness. Under La. Civ.Code Ann. art. 2344, damages due to personal injuries, including the portion of the award designed to compensate for loss of earnings, are separate property. Accordingly, Mr. Bordes' disability retirement benefits are his separate property and Ms. Bordes is not entitled to share in these benefits.
As previously stated, Mr. Bordes' disability retirement benefits will automatically convert into a normal retirement benefit when he reaches age sixty. A spouse's right to receive benefits payable by a retirement plan is an asset of the community. Sims, 358 So.2d 919, 922 (La.1978). At the time of partition, the non-employee spouse is entitled to a declaration of the interest attributable to the community in retirement benefits, if and when they become due. When they do become due, the non-employee spouse is entitled to receive the proportion of them recognized as attributable to the other spouse's employment during the existence of the community. Sims, 358 So.2d 919, 923-924. The parties entered into a consent judgment which recognized Ms. Bordes' 23% interest in the retirement plan from both the Parochial System and the Jefferson System to be effective May 17, 2012.[3] Therefore, Ms. Bordes is entitled to receive the proportion of Mr. Bordes' retirement benefits attributable to his employment during the community on May 17, 2012.
Finally, we address Ms. Bordes' potential claim for reimbursement for a share of the funds contributed to the annuity savings account during the existence of the community. It is uncontested that during the existence of the community Mr. Bordes and his wife paid into the annuity from which his retirement benefits were to one day be drawn.[4] When Mr. Bordes began receiving a monthly disability benefit from the Parochial and Jefferson Systems, funds were first drawn from the annuity savings account. According to Mr. Tynes, upon depletion of an employee's annuity account, benefit payments are made from the general pension fund. Mr. Bordes' personal annuity account has, in fact, now been depleted, and the source of his current disability retirement payment is the general pension fund.[5] If the situation were different, *449 and funds had never been withdrawn from the account, upon his death, the balance of the annuity account would normally be refunded in a lump-sum payment to his designated beneficiary, subject to a claim by his former wife for her portion of the account. However, because this annuity account has been depleted during disability and before regular retirement, and because Mr. Bordes has declined a survivorship benefit, if he dies before reaching normal retirement age, Ms. Bordes will never realize the benefit of her contributions to the annuity during the existence of the community. On the other hand, when Mr. Bordes reaches normal retirement age, his former wife may more than recoup her share of the marital funds paid into the annuity account in the form of a 23% share of her ex-husband's retirement benefits, depending on the length of his survival and the amount of retirement benefits he, and, correspondingly, she, receive after he reaches age sixty. If and when the situation arises where Ms. Bordes is not able to recoup her share of the funds paid into the annuity account from the regular retirement benefits, we reserve her right to a claim for reimbursement. Until that time, she is not entitled to share in her former husband's income replacing disability retirement benefits.

DECREE
For the foregoing reasons, we reverse the portion of the court of appeal judgment finding the benefits received from the Parochial Employees' Retirement System of Louisiana are community property. It is ordered that there be judgment in favor of Mr. Bordes, and against Ms. Bordes, that the disability retirement benefits received from the Parochial Employees' Retirement System of Louisiana are his separate property. Further, it is ordered that there be judgment in favor of Ms. Bordes recognizing her 23% interest in the retirement benefits to be paid by the Parochial Employees' Retirement System of Louisiana and the Employees' Retirement System of Jefferson Parish effective May 17, 2012. The matter is remanded to the trial court for further proceedings in accordance with this order.
REVERSED AND REMANDED.
VICTORY, J., concurs.
NOTES
[*] Knoll, J., not on panel. See Rule IV, Part 2, Sec. 3.
[1] Pursuant to La.Rev.Stat. Ann. 11:1941, a member of the Parochial System is eligible to retire if he has at least:

(1) Thirty years of creditable service, regardless of age.
(2) Twenty-five years of creditable service, and is at least age fifty-five.
(3) Ten years of creditable service, and is at least age sixty.
Mr. Bordes was 42 years old when he applied for disability retirement benefits, failing to meet the eligibility requirements for normal retirement.
[2] Basing the classification of benefits upon the purpose of the payment adheres to the real subrogation rule for classification. If the payment substitutes for income that would be separate property, the disability payment should also be separate property. Katherine S. Spaht & W. Lee Hargrave, Louisiana Civil Law Treatise, Matrimonial Regimes § 3.3 (2nd ed.1997).
[3] On May 17, 2012, Mr. Bordes will reach age sixty and be eligible for normal retirement.
[4] A spouse is entitled to be recognized as the owner of one-half of the value attributable to property acquired during the existence of the community. La. Civ.Code Ann. art. 2338; Sims, 358 So.2d 919 (La.1978); T.L. James & Co., 332 So.2d 834 (La.1976).
[5] According to Mr. Tynes, it usually takes an employee two to three years to deplete the annuity savings account. As of 12/31/91, the balance of Mr. Bordes' annuity account with the Parochial System was $20,253.02 (the balance of this account on the date of retirement was not included in the record). Mr. Bordes receives $15,722.88 per year in disability retirement benefits from the Parochial System. Even assuming his contributions from 1/1/92 through 11/17/94 totaled $5,000, Mr. Bordes would have exhausted the annuity account before he collected two years of disability retirement benefits.