*837 WELCH, J.
12Loleta H. Anzalone (“plaintiff’) appeals the trial court’s judgment holding that she is not entitled to a reimbursement of disability retirement income received by her former husband, Joseph E. Anzalone, Jr. (“defendant”), from January 2005 through July 2005, on the basis that the disability retirement income was not community property and, further, that she is not entitled to surviving spouse benefits should the defendant predecease her. Defendant has cross-appealed asserting that the trial court erred in ruling that his “regular retirement” benefits are community property to which plaintiff is entitled to one-half from defendant’s seventieth birthday on August 18, 2005, forward. For the following reasons, we affirm in part and reverse in part and remand.
FACTS AND PROCEDURAL HISTORY[1]
Loleta H. Anzalone and Joseph E. Anza-lone were married in Tangipahoa Parish on February 27, 1981, and resided there until defendant left the matrimonial domicile. No children were born of the marriage.
Defendant was elected to the position of district court judge for the 21st Judicial District Court for the Parish of Tangipa-hoa and was sworn in as judge on January 1, 1985. In October 1990, defendant was declared totally disabled from Guillain Barre Syndrome and retired as district court judge at age fifty-five with six years of service. Thereafter, on October 24, 1990, defendant began receiving disability retirement.
Defendant shared these benefits with plaintiff until January 2005. Defendant [ .¡filed a Petition for Divorce on April 12, 2005.[2] The parties were divorced by judgment dated July 18, 2005. The judgment decreed that “classification of the Judicial Retirement and/or Disability Income of Joseph E. Anzalone, Jr. be reserved pursuant to further litigation.”
On defendant’s seventieth birthday, August 18, 2005, or the earliest date that defendant was eligible to retire with only six years service, the Louisiana State Employees’ Retirement System (“LASERS”) converted his retirement benefits from disability to regular retirement. Plaintiff brought these proceedings seeking a determination of her entitlement to pre-con-version and post-conversion benefits, alleging the community nature of the benefits. Plaintiff also sought a declaration concerning her entitlement to surviving spouse benefits should defendant predecease her. Defendant answered the petition, asserting that the disability payments were his separate property and that his disability income was improperly converted by LASERS to retirement income. Moreover, defendant contends that an ex-spouse cannot be a surviving spouse and, in any event, he wed again on July 31, 2005, to *838 Nedra Posey Anzalone, and he continues to be married to her. Thereafter, defendant filed a third-party demand against LASERS alleging that the unilateral conversion of the classification of his benefits from disability to regular retirement was contrary to statutory law and was arbitrary and capricious. Defendant also alleged that to the extent he has incurred any additional obligation to his former spouse due to the improper reclassification by LASERS, LASERS owes him reimbursement.[3]
J4DISCUSSION

Overview of the Law Pertaining to Disability Retirement

It is well-settled in Louisiana that a former spouse is entitled to a pro rata share of the retirement benefits of a member spouse to the extent the retirement benefits were attributable to the former community. Frazier v. Harper, 600 So.2d 59, 61 (La.1992); Sims v. Sims, 358 So.2d 919, 922 (La.1978). The issue presented by this case is whether the disability retirement benefits constitute replacement for lost earning capacity, deferred compensation in the nature of retirement or pension income so as to be classified as community property, or both.
The courts have addressed the classification of disability benefits on numerous occasions. In Johnson v. Johnson, 532 So.2d 503, 505-506 (La.App. 1st Cir.1988),[4] this court held that disability payments received by an employee-spouse pursuant to La. R.S. 33:2113.1 were community assets. We determined that the right to receive compensation for the disability was based entirely on plaintiffs contribution from community earnings to the New Orleans Firefighters’ Pension and Relief Fund and on his years of service as a firefighter. Moreover, the benefits were part of the compensation provided to a firefighter in return for his employment-related service.
Thereafter, the trend was to adopt a “real subrogation analogy” approach to determining the nature of disability benefits.[5] In Hyde v. Hyde, 96-1725 (La.App. 1st Cir.6/26/97), 697 So.2d 1061, writ denied, 97-1987 (La.11/7/97), 703 So.2d 1274,[6] we concluded that disability benefits received by an employee-spouse until he reached age sixty-five were not deferred compensation and were not in the nature of retirement benefits.[7] The employee-spouse did *839 not make any contribution to the disability plan whatsoever. The disability plan was funded exclusively from contributions by the employer. If the employee-spouse had continued to work for Exxon without suffering a disabling condition, he would not have been entitled to receive any disability benefits. Moreover, had the employee-spouse been able to return to work, his monthly disability benefits would have been discontinued. However, this court held that once the employee-spouse reached retirement age (sixty-five years old), the non-employee-spouse would receive her proportionate share of the retirement benefits.[8]
In Lachney v. Lachney, 529 So.2d 59, 68 (La.App. 3rd Cir.), writ denied, 532 So.2d 764 (La.1988), the third circuit considered a disability insurance policy available through the employee-spouse’s employer and held that the payments received under the policy after dissolution of the community were the separate property of the employee-spouse. At issue, however, were monthly disability payments received after the dissolution of the community, which was stipulated to be on July 23, 1982. In Mercer v. Mercer, 95-1257 (La.App. 3rd Cir.4/3/96), 671 So.2d 937, 939-940, the third circuit again held that disability payments under a policy purchased with community funds were the separate property of the | ficlaimant-spouse. The court reasoned that the payments made pursuant to the policy were substitutions for lost wages and did not constitute deferred compensation in the nature of retirement or pension income to which a spouse had a legally cognizable claim.
The second circuit followed the same reasoning in another case entitled Johnson v. Johnson, 582 So.2d 926, 928-929 (La. App. 2nd Cir.1991). In that case, the husband collected disability retirement benefits from 1978 until the termination of the community in 1985. The court held that those payments were community, as they substituted for community income. In 1985, the husband would be eligible to retire and would be receiving retirement benefits, as opposed to disability payments. His retirement pension would be based on service time and average salary. Therefore, the court held that the payments received after 1985 were partly community income under the Sims formula. This rationale was also followed in Brant v. Brant, 26,508 (La.App. 2nd Cir.1/25/95), 649 So.2d 111, 114, where the court determined that disability payments, which represented compensation that an individual would have earned but for illness or disability, were not deferred income, and the classification of those benefits should be akin to the approach utilized by the courts in allocating tort damage awards and workers’ compensation benefits.
In Bordes v. Bordes, 98-1004 (La.4/13/99), 730 So.2d 443, the Louisiana Supreme Court addressed the issue of whether disability retirement benefits constitute deferred compensation so as to be classified as community property. Mr. Bordes, a parish employee, participated in two retirement systems by virtue of his employment. He contributed to the plans for a number of years during the marriage but eventually divorced and subsequently became disabled. Mr. Bordes was declared disabled in 1994 at the age of forty- *840 two, too young to meet the 17eligibility requirement for normal retirement, which for him would occur in 2012. However, he met the conditions for disability retirement benefits and, as such, was required to undergo a medical examination every year for the first five years of disability, and once every three years thereafter, until he reached normal retirement age. If he became able to engage or did engage in gainful employment, his disability retirement benefits would cease. Mr. Bordes was also required to submit an annual income statement to demonstrate that he was unable to engage in gainful employment. Bordes, 730 So.2d at 446-447. The normal retirement age for Mr. Bordes would be age sixty. Notably, when he reaches this age, his disability retirement benefit will automatically become a normal retirement benefit.
The supreme court in Bordes pointed out, with emphasis, that the significance of disability under this retirement plan is that disability triggers the early entitlement to retirement benefits which, but for the disability, would not be payable until normal retirement age. The court noted:
The purpose of paying benefits under a retirement plan is different when the benefits are payable because the employee spouse becomes disabled than when the benefits are payable because the employee spouse reaches normal retirement age. When the divorced employee spouse receives benefits because of disability, the benefits are paid in lieu of income that would otherwise be the employee spouse’s separate property. Basing the classification of benefits upon the purpose of the payment of the benefits is fair and equitable, and provides ease of administration. When the employee spouse becomes disabled, the benefits replace the working wages he or she can no longer earn. On the other hand, the non-employee spouse can continue to earn (and keep) one hundred percent of the wages he or she was earning when the employee spouse became disabled.
Bordes, 730 So.2d at 447-448 (footnote omitted).
The supreme court concluded that Mr. Bordes’ disability benefits were more akin to compensation for lost wages due to serious illness or injury and were, therefore, his separate property. However, the court noted that on May 17, 2012, Mr. Bordes would reach age sixty and be eligible for normal retirement. At that Ispoint, the court concluded Ms. Bordes would be entitled to her share of Mr. Bordes’ retirement benefits attributable to his employment during the community.

Plaintiff’s Entitlement to One-half of Defendant’s Disability Payments from January-July 2005

The jurisprudence holds that disability payments paid to an employee-spouse to replace wages he or she can no longer earn are the separate property of that spouse. Plaintiff contends that even if the disability benefits are classified as separate property after the dissolution of the community, she is still entitled to one-half of the benefits from January 2005, until the date the community terminated.[9] In support of her position, plaintiff cites to Bordes. Plaintiff correctly notes that Mr. Bordes became disabled and began to receive disability payments after the community terminated. Bordes involved the status of disability income that a spouse *841 received after divorce but before he or she reached regular retirement age. The court noted:
It is clear that Mr. Bordes’ disability retirement benefits are more akin to compensation for lost earnings due to serious injury or illness. Under La. Civ. Code Ann. art. 2344, damages due to personal injuries, including the portion of the award designed to compensate for loss of earnings, are separate property.
Bordes, 730 So.2d at 448.[10]
We note that the parties herein entered a consent agreement on September 8, 2003, to partition certain assets of the community; however, the agreement is silent | jiconcerning the partition of the disability payments.[11] In accordance with La. C.C. art. 2344, we find that the disability payments received by defendant from January 2005 to the date the community terminated were compensation for lost earnings to which plaintiff is entitled to one-half. Therefore, we reverse that portion of the trial court judgment holding that plaintiff was not entitled to one-half of these benefits.

Plaintiff’s Entitlement to a Proportionate Share of Defendant’s “Retirement Beneñts” after August 18, 2005

This issue is slightly more problematic under the facts presented by this case. The one thing that both parties appear to agree on is that the jurisprudence does not directly address the issue as it pertains to the facts of this case. A plain reading of the jurisprudence suggests that the payments that defendant received after he reached the age of seventy are partly community and should be divided pursuant to the Sims formula. However, defendant contends that his retirement benefits have been and continue to be disability benefits. Defendant contends that a judge’s eligibility for regular retirement is based solely on years of service and governed by La. R.S. 11:558.[12] Defendant contends that the *842 “regular” retirement 110provisions do not apply to him. Defendant contends that he did not retire when he was seventy years old. He contends that with six years of service, at age fifty-five, and solely because of his disability, he applied for and was approved for disability retirement pursuant to La. R.S. 11:561, which provides:
Notwithstanding any contrary provision of law, any person who becomes a member of the Louisiana State Employees’ Retirement System in accordance with the provisions of this Subpart [titled JUDGES AND OFFICERS OF THE COURT] and who thereafter becomes physically or mentally incapacitated to perform his duties shall be re-feed and, upon application to the board of trustees of the system and meeting the conditions for establishing such disability set forth in Subpart C of Part IV of Chapter I of Subtitle II of Title 11, R.S. 11:461, of the Louisiana Revised Statutes of 1950, as amended, shall be paid disability retirement benefits equal to fifty percent of the salary being received immediately preceding such retirement or an amount equal to the maximum retirement allowance provided for in R.S. 11:444 plus an additional one percent for each year of creditable service as a judge or court officer, whichever is greater.
Defendant contends that vesting for judges differs from vesting for other members of LASERS. Judges vest immediately for disability retirement, as opposed to other members for whom a period of service is demanded. He further contends that it was inappropriate for LASERS to apply the rules intended for regular retirement (La. R.S. 11:558) to disability retirément (La. R.S. 11:217-222). LASERS asserts that upon reaching the age at which defendant could apply for regular retirement, his retirement benefits were simply reclassified. Indeed, defendant received a letter from an attorney for LASERS dated August 16, 2005, which states:
This is in response to your recent request regarding the change in your LASERS retirement, from a disability retirement to a regular retirement. You have been sent letters in the past (enclosed) explaining that this takes place when a disability retiree reaches the age at which they become eligible for “regular” retirement. This is merely a reclassification. It appears from your letter that you fear aj^reduction in the amount of retirement when this event occurs. Let me assure you that this is not fee case.
The amount of your retirement check will not change when the reclassification takes place. Member Services states that the only thing that will change will involve the 1099R that LASERS prepares. Instead of distribution code 3, disability retirement, your 1099R will be coded with distribution code 7, normal retirement. We recommend you seek tax counsel on what you need to put with your tax return to show you are disabled. (Underlining in original, other emphasis supplied.)
Thereafter, defendant contends he wrote to LASERS and posed the hypothesis:
I am either a regular retiree or a disability retiree who has reached the equivalent age of retirement. I cannot be neither, nor can I be both.
*843 In a March 8, 2006 letter, LASERS responded in pertinent part:
A review of LASERS laws and procedures as they pertain to your circumstances reveals the following:
1. Because of your disability, you retired long before you would otherwise have been eligible under R.S. 11:558.
2. Because of your disability, your retirement benefit as calculated under R.S. 11:561 was (and remains) considerably higher than it would be as a “regular” retiree (50% of the salary you were receiving immediately preceding your retirement).
3. Because you have reached the age of 70, you would otherwise be eligible for retirement under R.S. 11:558(A)(5). Accordingly, LASERS has now changed the designation on your 1099 from “disability” retirement to “regular” retirement.
4. Because you have reached the age of 70, LASERS will no longer request you to submit an annual Disability Retiree Earned Income Statement under R.S. 11:221.
5. Because you have reached the age of 70, LASERS will no longer require that you submit proof of your continuing eligibility for disability benefits under R.S. 11:220.
In response to your question, I fear that I am not prepared to render an opinion in favor of either option. Clearly, disability retirement for judges in LASERS who have reached eligibility for regular retirement represents a unique situation which has aspects common to both forms of retirement. (Emphasis supplied).
LASERS takes the position that its action in changing defendant’s retirement 112status from “disability” to “regular” retirement was far from “unilateral” or “without authority.” LASERS contends that it has closely adhered to the standard widely applied throughout the public retirement systems community.[13] Further, LASERS contends that it has treated defendant as it has the “rank-and-file” retirees of LASERS under LAC 58:1.2523, which reads:
§ Conversion to Regular Retirement
A. In accordance with R.S. 11:217, when a disability retiree vests in a regular retirement benefit under R.S. 11:441, except R.S. 11:441(4), the disability retiree shall be converted to a regular retiree upon attaining the normal vested retirement age and shall receive the full vested benefit. The retiree shall have the option to, but not be required, to select the regular retirement benefit under R.S. 11:441(4) in lieu of a disability retirement benefit if the retiree qualifies for the benefit under R.S. 11:441(4).
Defendant contends that the above provision in no way pertains to him and, further, that administrative code provisions do not usurp statutory law. In the first instance, he was not disability retired pursuant to La. R.S. 11:217. He was disability retired pursuant to La. R.S. 11:561, which applies specifically to judges. Moreover, he contends that the only vehicle by which his disability retirement can be converted to a regular retirement, and only at his option, is provided for in La. R.S. 11:221(D)(4) which provides:
Notwithstanding any other law to the contrary, any member who retires while in service on a disability retirement and who has credit for the years of service required for normal retirement shall, *844 upon attainment of the age required for normal retirement, be eligible to receive full normal retirement benefits. To receive such benefits, the member shall file an application with the board of trustees of the retirement system. Upon commencement of retirement benefits, disability benefits shall cease.
Defendant asserts that he has not filed any application with LASERS under this provision, and LASERS was without authority to convert his disability retirement benefits to regular retirement benefits.
1 ^LASERS does not take a position concerning the community nature of these benefits but correctly points out that defendant’s interpretation of the law essentially allows a retiree to decide whether or not a payment of a community interest in retirement benefits to a former spouse is due. In other words, a retiree, or at least a retiring judge, disabled prior to the time that he is eligible for regular retirement, could decide to continue to receive disability retirement even after he has attained the normal retirement age just so that he could avoid paying a former spouse a community interest in retirement benefits to which she would otherwise be entitled.
The jurisprudence holds that in classifying benefits we must look to the purpose of the payment, as this is fair and equitable. However, we recognize, as has LASERS, that defendant’s retirement is a hybrid one. Defendant is no longer required to furnish the paperwork required of disability retirees because he has attained the age of seventy. Moreover, defendant continues to receive 50% of the salary he was receiving immediately preceding his disability retirement. It appears, although the record is not complete, that this figure is higher than the retirement benefit that defendant would have received had he retired at age seventy with only six years of service.[14] Through the happenstance of his disability, it appears that the benefit that defendant is receiving is greater than it would otherwise be. As stated, judges are treated differently than other state employees l^for purposes of disability retirement. Accordingly, LASERS did not recalculate defendant’s benefit after attaining the age of seventy, the age at which he was entitled to “normal retirement” with six years of service. Therefore, it appears that at least a portion of the benefit he is receiving is based on his disability. Nevertheless, plaintiff is entitled to her proportionate share of the retirement benefit attributable to the six years defendant served as judge without disability during the marriage. Accordingly, we affirm that portion of the trial court judgment holding that plaintiff is entitled to her proportionate share of those benefits from August 18, 2005; however, we limit her share to the percentage she would have been entitled to, *845 had defendant not been disabled, and attributable to defendant’s six years of service as a judge. We remand to the trial court to make that calculation, i.e. a calculation based upon retirement by defendant at age seventy with six years of service.[15]

Plaintiffs Entitlement to Surviving Spouse Benefits at the Death of Defendant

Louisiana Revised Statute 11:562(A) provides:
Benefits for the surviving spouse, minor children, and handicapped or mentally retarded children of any deceased person enumerated in R.S. 11:553 who becomes a member of the Louisiana State Employees’ Retirement System shall be paid in accordance with the provisions of law applicable to survivors of members of the system. However, the benefits paid to any such surviving spouse shall not be less than one-third of the salary or compensation which was being paid to the deceased person at the time of death or retirement, or an amount equal to one-half of the retirement pay which such person was entitled to receive or was receiving prior to his death, or the amount provided for the surviving spouse of any judge who otherwise may have qualified under the provisions of R.S. 11:1381, whichever is the greater. In addition, the minimum benefit for a surviving spouse shall be paid without regard to the number of years of creditable service accumulated in the system by the decedent.
The plain language of the statute reads “surviving spouse.” Recently, the | ^Louisiana Supreme Court addressed the entitlement of a former spouse to surviving spouse benefits in Louisiana State Employees’ Retirement System (LASERS) v. McWilliams, 2006-2191, 2006-2204 (La.12/7/07).[16] The case involved a concur-sus proceeding initiated by LASERS seeking guidance concerning the proper resolution of a claim by a former spouse of a LASERS member seeking a portion of LASERS survivors’ benefits. In contrast to the instant case, the LASERS member died before retirement (and, therefore, before he and/or his former or then current spouse had received any regular retirement benefits);[17] however, the case is instructive concerning the entitlement of a former spouse to survivors’ benefits.
The majority in LASERS v. McWilliams held that a former spouse is not entitled to a community portion of LASERS survivors’ benefits because entitlement to statutory survivors’ benefits from Louisiana’s public pension plans is *846 restricted to those categories of persons who are qualified under the express statutory language, and under La. R.S. 11:471, only surviving minor children, surviving handicapped children, and surviving spouses are entitled to survivors’ benefits. In so ruling, the supreme court expressly overruled Johnson v. Wetherspoon, 96-0744 (La.5/20/97), 694 So.2d 203 and abrogated Vicknair v. Firefighters’ Pension and Relief Fund of New Orleans, 2005-0467 (La.App. 4th Cir.6/15/05), 907 So.2d 787, two cases relied upon by plaintiff in support of her | Tfiposition of entitlement to survivors’ benefits. Accordingly, we affirm that portion of the trial court judgment holding that plaintiff is not entitled to surviving spouse benefits upon the death of defendant.
DECREE
Accordingly, we affirm that portion of the trial court judgment finding that plaintiff is entitled to her proportionate share of the retirement benefits received by defendant from August 18, 2005, forward, but remand to the trial court to make that calculation based on the instructions set forth in this opinion. We also affirm that portion of the trial court judgment finding that plaintiff is not entitled to receive any portion of the LASERS survivors’ benefits or survivor annuity in this case. We reverse the portion of the trial court judgment holding that plaintiff is not entitled to a reimbursement of one-half of the disability retirement income received by defendant from January 2005 through July 2005; however, we find that she is entitled to one-half of these benefits only from January 2005 through the date of the filing of the Petition for Divorce from which judgment was granted. The case is remanded to the district court to make that calculation.
All costs of this appeal are to be shared equally by the parties.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
PETTIGREW, J, concurs.
GAIDRY, J., concurs in part and dissents in part with reasons.
CARTER, C.J., concurs in part and dissents in part for reasons assigned by GAIDRY, J.

. By agreement of all parties, the matter, in lieu of trial, was submitted on briefs. The salient facts as stated in this opinion are based on the contents of the pleadings, mem-oranda and exhibits attached to the memo-randa found in the record. Unless otherwise noted, the parties do not dispute the validity of the facts stated herein. As there was no trial, the litigants did not introduce any documents into evidence. However, it appears the parties have treated several documents as if they were introduced without objection by any party. We have reviewed these documents and occasionally make reference to them in this opinion for the sole purpose of stating the parties’ respective positions. However, the documents are not germane to our resolution of the issues presented.

. Plaintiff sets forth this date in her memorandum filed with the trial court. However, there is no documentary evidence in the record to verify this date.

. Defendant appeals that portion of the trial court judgment that held that LASERS' conversion of his benefits was lawfully permitted and that all benefits received thereafter are part of the community estate; however, defendant does not appeal that portion of the judgment that dismisses his third-party demand against LASERS.

. We note that the supreme court declined to follow Johnson in Bordes v. Bordes, 98-1004 (La.4/13/99), 730 So.2d 443, discussed later in this opinion.

. Basing the classification of benefits upon the purpose of the payment adheres to the real subrogation rule for classification. If the payments are to replace income that would be separate (i.e., post-dissolution earnings), the disability payment should also be separate. Katherine S. Spaht & W. Lee Hargrave, Matrimonial Regimes § 3.3, Louisiana Civil Law Treatise (2nd ed. 1997).

. We note that the supreme court also declined to follow Hyde in Bordes.

. In Hyde, the parties physically separated on November 5, 1992, and Mrs. Hyde filed a petition for divorce on that same date. The parties were divorced by judgment dated June 17, 1993. According to La. C.C. art. 159, the community should have terminated retroactive to the date of the filing of the petition in the action in which the judgment of divorce was rendered, or on November 5, 1992. Mr. Hyde began receiving disability payments on December 1, 1992, or after the community terminated.

. In Hyde, we distinguished Johnson, noting that in Johnson the employee’s right to receive benefits was based upon his contributions to the disability fund, which were made from community funds and were calculated based on the number of years of service that occurred during the existence of the community. Hence, the disability funds flowed from a community endeavor. Hyde, 697 So.2d at 1065.

. Previously, plaintiff argued that she was entitled to one-half of defendant’s disability payments from January 2005 until July 2005. Now, plaintiff concedes that the community property regime terminated retroactive to the date of filing the Petition for Divorce, which she alleges was April 12, 2005, as per La. C.C. art. 159.

. Louisiana Civil Code article 2344 provides:
Damages due to personal injuries sustained during tire existence of the community by a spouse are separate property.
Nevertheless, the portion of the damages attributable to expenses incurred by the community as a result of the injury, or in compensation of the loss of community earnings, is community property. If the community regime is terminated otherwise than by the death of the injured spouse, the portion of the damages attributable to the loss of earnings that would have accrued after termination of the community property regime is the separate property of the injured spouse.

. The September 8, 2003 consent agreement is not contained in the record. However, in brief to the court, plaintiff set forth the terms of said agreement, which do not establish plaintiff's entitlement to the disability retirement income of defendant. The parties agree that the issue of plaintiff’s entitlement to such income was preserved by the provision contained in the divorce decree.

.Louisiana Revised Statutes 11:558 provides in part, as follows:
(A) (1) Any person covered by this Part who becomes a member of the Louisiana State Employees' Retirement System and who prior to application for service retirement has accumulated a total of at least eighteen years of creditable service as a judge or court officer shall be entitled to retire without regard to the age he has attained at the time he makes application for retirement.
(2) Upon attaining a total of twenty years of creditable service, at least twelve years of which were as a judge or court officer, any such person shall be entitled to retire if he has attained the age of fifty years.
(3) Upon attaining a total of at least twelve years of creditable service as a judge or court officer, any such person shall be entitled to retire when he attains the age of fifty-five years.
(4) Upon attaining a total of at least ten years of creditable service as a judge or court officer, any such person shall be entitled to retire when he attains the age of sixty-five years.
*842 is) Upon attaining the age of seventy years any such person shall be entitled to retire hereunder without regard to the number of years of creditable service as a judge or court officer; however, nothing in this Title shall be construed as prohibiting a judge from remaining in office beyond his seventieth birthday so long as remaining in office is constitutionally permissible.

. By way of example, LASERS contends that the Teachers Retirement System of Louisiana and the Louisiana School Employees’ Retirement System follow a nearly identical rule.

. A judge’s "normal” retirement benefit is calculated using the following formula: years of creditable service multiplied by an accrual multiplied by average compensation. The average annual compensation is the average earned compensation he received for any three years of creditable service during which such earned compensation was the highest. See La. R.S. 11:558(D). The accrual rate is 2.5% plus an additional benefit equal to one percent for the number of years of service as a judge. See La. R.S. 11:444 and La. R.S. 11:557. So, for example, a judge retiring at age 70 with 6 years of sen/ice with average compensation in the amount of $80,000 would receive a retirement benefit as follows: 6 x 2.5% x $80,000 = $12,000 plus 6 x 1% x $80,000 = $4,800 for a total of $16,800 a year. On the other hand, that same judge if disability retired after 6 years of service would receive disability retirement benefits equal to 50% of the salary being received immediately preceding such retirement. If his salary was $80,000 per year, his disability retirement would be $40,000 per year.

. On the record before us, we cannot determine if defendant is entitled to any of the supplemental benefits provided to qualified judges under La. R.S. 11:558 for prior service in the armed forces, as a legislator, or as a district attorney. Thus, we cannot make this final calculation.

. LASERS v. McWilliams was decided after the trial court rendered judgment in the instant matter. We note that the supreme court granted an application for rehearing in LASERS v. McWilliams on March 14, 2008.

. We note that the supreme court devoted a lengthy discussion to the difference between retirement benefits and survivors’ benefits. Moreover, the court distinguished between "survivors' benefits” and "survivors’ annuities.” However, defendant in the instant case retired (disability or regular), and the parties are contesting entitlement to "benefits” upon his future death. On the record before us, we cannot determine whether defendant has elected to receive the maximum benefit at this juncture or whether he has selected a retirement option to leave a monthly benefit for a named beneficiary upon his death; however, this is not germane to our resolution of his former spouse’s entitlement to survivors’ "benefits.”