WELCH, J.
| ¡¿Diana D. Morgan appeals a judgment of supplemental partition of the community interest in her defined benefit pension plan through the Teacher’s Retirement System of Louisiana (“TRSL”). For reasons that follow, we affirm.
FACTUAL AND PROCEDURAL HISTORY
The factual and procedural history of this case is more fully set forth in our earlier opinion, Morgan v. Morgan, 2013-0681 (La.App. 1 Cir. 12/27/13), 2013 WL 6858250 (unpublished).[1] In sum, the parties were married in 1980 and had four children during their marriage.[2] On June 28, 1999, Michael Morgan filed a petition for divorce and the parties were subsequently divorced on October 4, 2001. Thereafter, on December 5, 2008, the parties entered into a stipulated judgment of partition of community property, which provided that the employment pension plans of both parties would be divided in accordance with the formula set forth in Sims v. Sims, 358 So.2d 919 (La. 1978).[3] During the marriage, Diana Morgan was employed as a teacher by the St. Tamma *1237 ny Parish School Board and was a member of TRSL. In furtherance of the stipulated judgment of partition, a division order with respect to Diana Morgan’s benefits with TRSL was signed by the trial court on March 24, 2011. Morgan, 2013-0681 at p.1.
On September 20, 2012 Diana Morgan filed a petition for supplemental partition of her pension, asserting that the stipulated judgment and division order [¡/partitioning her retirement benefits were incomplete and erroneous. According to Diana Morgan, she was “forced” to take disability retirement, but had been unable to receive her disability benefits because the division order did not differentiate between disability benefits and retirement benefits. Therefore, she sought to have the TRSL division order supplemented or clarified to provide that Michael Morgan was entitled to receive only his percentage portion of Diana Morgan’s retirement benefits, reserving unto her the right to receive her disability benefits. Michael Morgan responded by filing a peremptory exception raising the objections of prescription/per-emption, no cause of action, and res judi-cata; and a declinatory exception raising the objection of lack of subject matter jurisdiction. The trial court sustained the peremptory exceptions and dismissed Diana Morgan’s petition for supplemental partition, and Diana Morgan appealed to this Court. Morgan, 2013-0681 at pp. 1-2.
On appeal, this Court reversed the trial court’s ruling on the peremptory exceptions, finding that Diana Morgan had stated a cause of action for supplemental partition and/or declaratory judgment regarding her disability benefits, that her action was neither prescribed nor per-empted, and that her action was not barred by res judicata because Michael Morgan failed to prove that he and Diana Morgan clearly intended that her disability benefits would be included in the stipulated judgment partitioning the community property. Morgan, 2013-0681 at pp.2 and 6. Thus, Diana Morgan’s defined benefit pension plan with TRSL was subject to a supplemental partition.
Following this Court’s decision in Morgan, the supplemental partition of Diana Morgan’s TRSL benefits was submitted to the trial court for a decision based upon a joint stipulation of facts and applicable law and the memoranda filed |4by the parties, including the exhibits attached thereto.[4] For purposes of the supplemental partition, the parties stipulated to the following:
Michael Morgan and Diana Morgan were married on November 22, 1980, and their community was terminated on June 28, 1999. From 1986 through 1996 and from 2001 through 2011, Diana Morgan was on “active service” with TRSL. From 1995 through 2001, Diana Morgan was on disability retirement with TRSL; four of those six years of disability retirement (1995-1999) were during the community.
Diana Morgan finally retired in December 2011 at age 52. At that time, she had 19½ years of active service. However, since Diana Morgan returned to active service for at least three years after her disability retirement, her six years of disability retirement (1995-2001) were credited to her account as active service years for purposes of determining her eligibility for regular service retirement.[5] Therefore, at *1238 the time of Diana Morgan’s retirement in December 2011, she was credited with 25½ years of service for purposes of determining her eligibility for regular service retirement (instead of 19½ years); however, the six years of disability retirement were not credited to her for the calculation of her retirement benefits, which was based on 19½ years of active service. When Diana Morgan retired in December 2011, she took disability retirement and began receiving a monthly benefit of $2,325.00, which benefit was based on a 2.5% multiplication factor, as well as a benefit for her minor child in the amount of $1,162.00 per Rmonth.[6] However, Diana Morgan’s disability retirement was immediately converted by TRSL to a regular service retirement since she was eligible for a regular service retirement because she had more than twenty years of creditable service; the conversion of her retirement did not change the amount of her benefits.[7] Instead, the effect of the conversion was to free Diana Morgan from the obligations to submit to a periodic medical examination and provide a notarized annual income statement, which is generally required of disability retirees, and the limitation on being employed in the education field.[8]
In December 2011, with only 19½ years of active service, if Diana Morgan did not have the accredited disability service, she would not have been eligible for regular service retirement at the age of 52; she would have been eligible for regular service retirement at age 60 (on September *1239 17, 2019) (because she had at least five years of accredited service) using a 2% factor with a monthly benefit of | ^approximately $1,860.00.[9] In December 2011, with 23½ years of eligible service (attributing the four years of disability retirement during the community to retirement eligibility), Diana Morgan was immediately entitled to |7regular service retirement using a 2% factor with a monthly benefit of approximately $1,860.00.[10] In December 2011, with 25½ years of eligible service (attributing all six years of disability retirement to eligibility), Diana Morgan was immediately entitled to regular service retirement using a 2% factor with a monthly benefit of approximately $l,860.00.[11]
At issue in the supplemental partition of Diana Morgan’s TRSL benefits was the six years that Diana Morgan was on disability retirement (1995-2001), which, following her return to active service for three years, made her eligible for a regular service retirement at age 52 rather than age 60. Michael Morgan contended that the disability retirement years later credited to Diana Morgan toward her retirement eligibility should be considered eligibility for regular service retirement regardless of whether they occurred during the community or after the community. Further, he maintained that the four years of disability retirement that Diana Morgan accrued during the community (1995-1999) were community property (as were the disability benefits that Diana Morgan received during that time) and that he was entitled to the eligibility benefit of those four years. Diana Morgan contended that Michael Morgan was not entitled to any benefit whatsoever from the enhancement of her retirement based on her disability, including attributing the four years of disability retirement during the community towards her eligibility for regular service retirement, because the enhancement was due to her disability and her active service years after the termination of the community.
Based on the stipulated facts and law, the trial court issued written reasons for judgment finding “that the years of disability retirement [that Diana Morgan] accrued during the marriage [were] her separate property and [that Michael Morgan was] ... not entitled to a portion of it.” In reaching this determination, the trial court noted that “[t]he basis for TRSL calculating the amount of [Diana Morgan’s] benefit is based upon years that she returned to work after the Petition for Divorce was filed (¡Le. post-separation or separate property),” that Michael Morgan was “not entitled to a portion of any benefit paid to [Diana Morgan] as a result of her post-separation contribution,” and that Diana Morgan’s “post-separation contribution is her return to work for at least three (3) years.” The trial court then concluded that Michael Morgan’s Sims formula share of Diana Morgan’s TRSL retirement was “23% of 19½ years and that [Michael Morgan] does not begin to receive the 2% disability benefit increase until [Diana Morgan’s] sixtieth birthday (September 17, 2019).”
After the trial court issued its reasons for judgment, the parties disagreed over *1240 the interpretation of those reasons for judgment. Therefore, the parties filed a joint motion for clarification of the reasons for judgment. Michael Morgan interpreted the reasons for judgment as ordering: (1) that he was entitled to his share of benefits retroactive to December 2011; (2) that he would receive 23% of the community-portion of those benefits, past and future, calculated on a 2% factor, with Diana Morgan to receive the difference between the regular service retirement benefits ($1,861.00) and the disability retirement benefits ($2,325.00) until her 60th birthday; and (3) that when Diana Morgan reached 60 years of age, he would receive 23% of Diana Morgan’s benefit (on the 2½%) factor, not including any amount she would receive for their minor child. On the other hand, Diana Morgan ^interpreted the reasons for judgment as ordering: (1) that Michael Morgan’s Sims formula share of her retirement benefits under TRSL was determined to be 23%, which is ⅛ of the community portion, with the community portion being 9 years of community service divided by 19½ years of total service;[12] (2) that Michael Morgan would receive 23% of a 2% retirement benefit, (rather than Diana Morgan’s disability enhanced 2½% retirement benefit) beginning on September 17, 2019, the date upon which Diana Morgan turns 60 years of age; and that (3) Diana Morgan’s entire benefit prior to her 60th birthday and the permanent extra ½% benefit amount are determined to be her separate property, resulting from her service after the termination of the community, of which Michael Morgan would receive no share.
Thereafter, the trial court signed a judgment providing: (1) that Michael Morgan be recognized as an alternative payee of the regular retirement benefits received by Diana Morgan as a result of her employment with the St. Tammany Parish School System and her participation in the TRSL retroactive to her initial receipt of those benefits in December 2011; (2) that Michael Morgan’s interest in Diana Morgan’s TRSL benefits, as alternate payee, was determined in accordance with the Sims formula to be 23% (½ of [9 h- 19½]), but not including any benefits Diana Morgan is presently receiving that were attributable to her disability (ie., the disability multiplication factor of 2½% as distinguished from the 2% multiplication factor pertaining for regular retirement benefits) until Diana Morgan’s 60th birthday on September 17, 2019, at which time Michael Morgan will be entitled to 23% of Diana Morgan’s benefits without adjustment regarding the applicable factor; and (3) that TRSL was ordered to prepare a division order based on the calculation of Michael Morgan’s benefits, as set forth in the judgment, and that Diana Morgan, as the participant in the TRSL, would be entitled to all benefits not 19otherwise conveyed in the judgment.[13] From this judgment, Diana Morgan has appealed.
On appeal, Diana Morgan contends that: (1) the trial court erred in determining that Michael Morgan was entitled to a share of her TRSL benefits that were payable to her before age 60; and (2) the trial court erred in awarding Michael Morgan a share of her TRSL benefits calculated at a 2½% multiplication factor rather than at a 2% multiplication factor.
*1241 LAW AND DISCUSSION

TRSL Retirement Benefits and Disability Retirement

Among other benefits, TRSL provides its members “Retirement benefits” (La. R.S. 11:761) and “Disability retirement” (La. R.S. 11:778). Morgan, 2018-0681 at p.4. Pursuant to La. R.S. 11:761(A)(1), any person who became a member of TRSL prior to July 1, 1999, may retire upon written application to the board of trustees, if at the time of application the member has attained the age of 60 years and has credit for five year's of accredited service, or has twenty years or more of creditable teaching service regardless of age. Upon such service retirement, a member shall receive an annual benefit which provides a total allowance equal to 2% of his average earnable compensation multiplied by the number of years of creditable service, plus the-sum of three hundred dollars. La. R.S. 11:768(A)(1).
With respect to disability retirement, upon the application of a member in service or of his employer, any member may be retired by the board of trustees, not less than thirty nor more than ninety days following the date of filing such application, on a disability retirement allowance, provided that the medical board, after a medical examination of the member, certifies that the member is mentally or physically incapacitated for the further performance of the duties currently being 11flperformed, that the incapacity is likely to be total and permanent, and that the member should be retired. La. R.S. 11:778(C). Upon retirement for disability, a member shall receive a disability retirement allowance equal to 2½% of his average compensation multiplied by his years of creditable service, but not more than fifty percent of his average compensation. La. R.S. 11:779(B)(1). In addition, once each year during the first five years following any retirement of a member on a disability retirement and once in every three-year period thereafter, a disability retiree who has not yet attained the age of sixty, shall undergo a medical examination at the retiree’s expense; however, the periodic reexaminations may be discontinued upon advice of the medical board that the retiree’s condition is either , terminal or that chances of recovery are highly improbable. See La. R.S. 11:780(A). Further, every disability retiree shall submit to the board of trustees a notarized annual earnings statement detailing his earned income from employment in the previous tax year. La. R.S. 11:780(B).
However, a disability retiree, upon attainment of the earliest age that he would have become eligible for a retirement benefit, if he had continued in service without further change in compensation, shall become a regular retiree using only his years of creditable service; however, his maximum benefit shall not be less than his disability benefit as provided by La. R.S. 11:779(B)(1). La. R.S. 11:779(D).

Classification of Retirement Benefits

A spouse’s right to receive benefits payable by a retirement plan is, to the extent attributable to employment during the community, an asset of the community.[14] Sims, 358 So.2d at 922. At the time of the partition, the non-employee spouse is entitled to a declaration of the interest attributable to the In community in the retirement benefits, if and when they become due; when they do become due, the non-employee spouse is entitled to receive the proportion of them recognized as attributable to the other spouse’s employment during the existence of the community. Bordes v. Bordes, 98-1004 (La. 4/13/99), *1242 730 So.2d 443, 448 (La. 1999), citing Sims, 358 So.2d at 923-924.
In Sims, 358 So.2d at 924, the Louisiana Supreme Court set forth the formula to determine a non-employee spouse’s interest in the employee spouse’s retirement benefit plan at the time the community property regime is terminated. The formula directs that the community interest be expressed by a fraction, the numerator of which represents the number of years of creditable service that accrued during the existence of the community and the denominator of which represents the total years of creditable service. Id. In order to calculate the non-employee spouse’s interest, the benefit is multiplied by ⅜ multiplied by the fraction representing the community interest., Id.
On the other hand, disability benefits payable by a benefit plan present a different issue. In Bordes, the Louisiana Supreme Court addressed the issue of whether disability benefits were community or separate property. Mr. -Bordes, a parish employee, participated in two retirement systems by virtue of his employment and he contributed to the plans for a number of years during the marriage. However, he eventually divorced and subsequently became disabled, Mr. Bordes was declared disabled in 1994 at the age of 42—too young to meet the eligibility requirement for normal retirement, which for him would occur in 2012 at age 60. However, he met the conditions for disability retirement benefits, and as such, was required to undergo a medical examination every year for the first five years of disability and once every three years thereafter, until he reached normal retirement age and he was also required to submit an annual income statement. Notably, when Mr. Bordes reached the normal retirement age' of 60, his disability | ^retirement benefit would automatically become a normal retirement benefit. Bordes, 730 So.2d at 444-447.
The Court pointed out that the significance of disability under Mr. Bordes’s retirement plan was that his disability triggered the early entitlement to retirement benefits that, but for the disability, would not be payable until normal retirement age. Bordes, 730 So.2d at 447. The Court further noted that when Mr. Bordes reached normal retirement age, neither the amount of his payment nor the source of the payment would change; the only changes would be the discontinuance of the requisite periodic medical examination and annual income statement. Id. The Court further noted that the purpose of paying benefits under a retirement plan is different when the benefits are payable because the employee spouse becomes disabled than when the benefits are payable because the spouse reaches normal retirement age. When the divorced employee spouse receives benefits because of disability, the benefits are paid in lieu of income that would otherwise be the employee spouse’s separate property. Therefore, the Court determined that basing the classification of benefits upon the purpose of the payment of benefits was fair and equitable, and provided ease of administration, and that when the employee spouse becomes disabled, the disability benefits replace the working wages he or she can no longer earn. Bordes, 730 So.2d at 447-448.
The Court then concluded that Mr. Bordes’s disability benefits were more akin to compensation for lost wages due to serious illness or injury, and were therefore, his separate property. However, the court noted that on May 17, 2012, Mr. Bordes would reach age 60 and be eligible for normal retirement. At that point, the Court concluded Ms. Bordes would be entitled to her share of Mr. Bordes’s retirement benefits attributable to his employment during the community. Bordes, 730 So.2d at 448.
*1243 |isln Anzalone v. Anzalone, 2007-1905 (La.App. 1 Cir. 11/18/08), 25 So.3d 836, writ granted and .judgment reversed in part and remanded, 2008-2988 (La. 4/13/09), 6 So.3d 755, this Court addressed a similar issue. Therein, Mr. Anzalone was elected to the position of district court judge and was sworn in. as a judge on January 1, 1985. In October 1990, he was declared totally disabled and retired as district court judge at age 55 with 6 years of service, and on October 24, 1990, he began receiving disability retirement. Judge Anzalone shared these disability benefits with his wife until January 2005. A petition for divorce was filed on April 12, 2005, and the parties were divorced by judgment dated July 13, 2005. On August 18, 2005, Judge Anzalone’s 70th birthday— the earliest date that Judge Anzalone was eligible to retire with only six years of service—the Louisiana State Employee’s Retirement System (“LASERS”) converted his retirement benefits from disability to regular retirement. Ms. Anzalone claimed that she was entitled to a portion of Judge Anzalone’s benefits—both before and after the conversion of those benefits from disability to regular retirement benefits. Judge Anzalone countered that his disability payments were his separate property and that his disability income was improperly converted by LASERS to retirement income. Anzalone, 25 So.3d at 837.
This Court, under the reasoning set forth in Bordes, determined that the disability benefits Judge Anzalone received from January 2005 through the date the community terminated were compensation for lost earnings (and thus community property), and as such, Ms. Anzalone was entitled to one-half of those benefits. Anzalone, 25 So.3d at 841. With respect to the benefits Judge Anzalone received after the age of 70, this Court recognized that Judge Anzalone’s retirement was “a hybrid one.” Anzalone, 25 So.3d at 844. This Court noted that Judge Anzalone was no longer required to furnish the paperwork of disability retirees because he attained the age of 70 and he continued to receive 50% of the |)4salary he was receiving immediately preceding his disability, which figure was higher than the retirement benefit Judge Anzalone would have received had he retired at age 70 with only six years of service. Id.. Thus, this Court noted that “[tjhrough the happenstance of his disability,” Judge Anzalone was receiving a benefit greater than it otherwise would be because LASERS, did not recalculate his benefit after attaining the age of 70—the age at which he was entitled to normal retirement with six years of service. Id. Therefore, this Court determined that at least,a portion of Judge Anzalone’s benefit was based,on his disability. Accordingly, this Court determined that, beginning on August 18, 2005 (the date Judge Anzalone turned 70), Ms. Anzalone was entitled to her proportionate share of the retirement benefit attributable to.the six years Judge Anzalone served as a judge; however, this Court limited her share to the percentage she would have been entitled to had Judge Anzalone not been disabled, and attributable to his six years of service as a judge. Anzalone, 25 So.3d at 844-845.
However, with respect to this Court’s determination that Ms. Anzalone was entitled to one-half of Judge Anzalone’s retirement from the date of his 70th birthday, but only in that portion attributable to the six years he actually worked as a district court judge prior to becoming disabled, the Louisiana Supreme Court reversed this Court’s judgment and reinstated the judgment of the trial court, which granted Ms. Anzalone one-half of the total amount of retirement benefits Judge Anzalone began receiving on his 70th birthday. Anzalone v. Anzalone, 2008-2981, 2008-2988 (La. 4/13/09), 6 So.3d 755 (per curiam).

*1244
Michael Morgan’s Entitlement to a Proportionate Share of Diana Morgan’s Benefits commencing December 2011 Rather Than Age 60.

(Assignment of Error Number 1)
In this case, the trial court’s judgment awarded Michael Morgan an interest in the regular retirement benefits received by Diana Morgan as a result of her employment with the St. Tammany Parish School System and her participation in | isthe TRSL in accordance with the Sims formula, which award was retroactive to Diana Morgan’s initial receipt of those benefits in December 2011. Diana Morgan contends that the trial court erred in awarding Michael Morgan an interest in her benefits retroactive to December 2011 rather than commencing his interest in her benefits when she reached age 60, which she claimed was her “normal retirement age.” She essentially argues that her benefits from December 2011 through the date she reaches age 60 are disability benefits, which should be classified as her separate property, and that Michael Morgan is only entitled to the Sims portion of her benefits after age 60, because those benefits are her regular retirement benefits. Michael Morgan contends that age 60 was not Diana Morgan’s “normal retirement age” and he maintains that the trial court’s judgment was correct because at the time Diana Morgan retired in December 2011, she was eligible for regular retirement benefits because she had 25 years of accredited service, and thus was eligible to retire regardless of age. In other words, he argues that the benefits she began receiving when she retired in December 2011 are not disability benefits, but rather, they are regular retirement benefits for which he is entitled to the Sims portion. We agree.
Even though when Diana Morgan retired in December 2011, she took a disability retirement, La. R.S. 11:779(D) mandates that a disability retiree, upon attainment of the earliest age that he or she becomes eligible for a retirement benefit, the disability retiree “shall become a regular retiree” based on his years of creditable service. Louisiana Revised Statutes 11:761(A)(1) provides that any member who became a member of TRSL prior to July 1, 1999 may retire upon written application to the board of trustees, if at the time of the application, the member has attained the age of sixty years and has credit for five years of accredited service, or has twenty years or more of creditable teaching service regardless of age. Herein, the parties stipulated that Diana Morgan became a 11fimember of TRSL in 1986 (prior to July 1, 1999) and that when she retired in December 2011, she had 25½ years of creditable service, which included 19½ years of actual teaching service and 6 years of service on disability. Thus, in December 2011, Diana Morgan was eligible for regular retirement regardless of her age because she had more than twenty years of creditable service; Diana Morgan attaining the age of 60 was not a prerequisite to her eligibility to retire. Furthermore, once Diana Morgan’s retirement was converted to regular retirement, she was no longer required to submit to periodic medical examinations or submit a notarized annual earnings statement to TRSL’s board of trustees.
In Bordes, although the Court characterized Mr. Bordes’s disability retirement benefits as his separate property, the Court further noted that under Mr. Bordes’ retirement plan, when Mr. Bordes reached age 60 he would be eligible for regular retirement and his disability retirement would automatically be converted into a normal retirement benefit. Bordes, 730 So.2d at 448. Thus, the Court held that when Mr. Bordes turned 60, Ms. Bordes would be entitled to receive the proportion of Mr. Bordes’s retirement benefits attrib- *1245 utablé to his employment during the community (i.e., the Sims portion of the retirement benefits). Id. Likewise, in Anzalone, when Judge Anzalone turned 70 years old—the earliest date he was eligible to retire under his retirement plan with 6 years of service—his disability retirement was converted to regular retirement; at that time, Ms. Anzalone was entitled to her interest in the retirement benefits. Anza-lone, 6 So.3d at 755.
We recognize that under the particular facts and applicable retirement plans in Bordes and Anzalone, the employee spouse’s eligibility for regular retirement was based on reaching a predetermined age, whereas in this case, under TRSL’s retirement plan, Diana Morgan’s eligibility for regular retirement was based on her accumulating more than twenty years of accredited service rather than reaching age I176O. However, the reasoning and holdings of both Bordes and Anzalone remain applicable—the earliest date at which an employee spouse receiving disability benefits is eligible to retire under their respective retirement plan, the disability benefits become retirement benefits to which a former spouse is entitled to the Sims portion. Accordingly, in this case, in December 2011, when Diana Morgan took disability retirement at age 52 and her retirement was immediately converted to a regular retirement because she was eligible to retire based on her years of service, Michael Morgan was entitled to the Sims portion of her retirement benefits (ie., ½ of the interest attributable to the community). Therefore, we affirm that portion of the judgment of the trial court awarding Michael Morgan an interest in the TRSL retirement benefits received by Diana Morgan in accordance with the Sims formula retroactive to Diana Morgan’s.initial receipt of those benefits in December 2011.
Michael Morgan’s Entitlement to Benefits Based Upon a #⅜% Multiplication Factor Bather Than a 2% Multiplication Factor
(Assignment of Error Number 2)
As set forth above, in December 2011, Diana Morgan took disability retirement, which provided her with a monthly benefit of 2½% of her average compensation multiplied by her years of creditable service; however, her retirement was automatically converted to a regular retirement, with the same monthly benefit as a disability retirement, because she was eligible for a regular retirement. See La. R.S. 11:761; La. R.S. 11:778(C); and La. R.S. 11:779(B)(1) and (D). Had Diana Morgan not taken disability retirement, when she retired, she would have been provided a monthly benefit of 2% of her average earnable compensation multiplied by her number of years of creditable service. See La. R.S. 11:768(A)(1).
In awarding Michael Morgan his interest in Diana Morgan’s TRSL benefits in accordance with the Sims formula, the trial court ordered that his interest in her 1 ^benefits be based on the 2% multiplication factor (applicable to regular retirement benefits) until Diana Morgan’s 60th birthday (September 17, 2019), at which time, he would be entitled to the Sims portion of her retirement based on the 2½% multiplication factor (applicable to disability benefits). Diana Morgan contends that the trial court erred in awarding Michael Morgan any interest based on the 2½% multiplication factor, since the increased multiplication factor was attributable to her disability, and thus her separate property. However, Michael Morgan contends that, in accordance with the Louisiana Supreme Court decisions in Bordes and Anzalone, the trial court correctly awarded him the Sims portion of Diana Morgan’s retirement benefits based on the 2½% multiplication factor because she is *1246 receiving the enhanced benefit as regular retirement benefits (rather than as disability benefits).[15] We agree.
As set forth above, in Anzalone, this Court noted that “[t]hrough the happenstance of [Judge Anzalone’s] disability,” he was receiving a retirement benefit greater than it would have been had he retired at age 70 with only six years of service, and thus, at least a portion of the benefit he was receiving was based on his disability. Anzalone, 25 So.3d at 844. Further, this Court determined that Ms. Anzalone was entitled to a proportionate share of the retirement benefit attributable to the six years that Judge Anzalone served as a judge without disability during the marriage; thus, this Court limited Ms, Anza-lone’s share of Judge Anzalone’s retirement benefits to the percentage she would have been entitled to, had the defendant not been disabled, and attributable to Judge Anzalone’s six years of service as a judge. Anzalone, 25 So.3d at 844-845. In other words, this Court | ^recognized that Ms. Anzalone was entitled to receive the Sims portion of Judge Anzalone’s regular retirement benefits from the date they became payable, but held that her portion would not be enhanced by Judge Anza-lone’s disability.
However, insofar as this Court limited Ms. Anzalone’s entitlement to benefits to the extent attributable to Judge Anzalone’s six years of actual non-disabled service as a judge, the Louisiana Supreme Court reversed this Court and reinstated the trial court judgment, which awarded Ms. Anza-lone her Sims portion of Judge Anzalone’s entire retirement benefit (even though part of that benefit was attributable to disability). Anzalone, 6 So.3d at 755.
Analogous to the facts in Anzalone, in this case, when Diana Morgan retired, she began receiving retirement benefits rather than disability benefits. However, because Diana Morgan was disabled at the time she retired, she received a retirement benefit greater than it would have been had she not been disabled—in other words, her retirement benefit was based on the 2⅜% multiplication factor used for disability benefits rather than the 2% multiplication factor used for regular retirement benefits. Thus, like Judge Anzalone, a portion of her retirement benefit is based on her disability. See Anzalone, 25 So.3d at 844. Nonetheless, under the Louisiana Supreme Court’s holding in Anzalone, 6 So.3d at 755 that the non-employee spouse is entitled- to the Sims portion of the employee spouse’s entire retirement benefit (even though part of that benefit was attributable to disability), we find that Michael Morgan was entitled to the Sims portion of Diana Morgan’s entire retirement benefit (based on a 2½% multiplication factor), rather than a Sims portion limited by the benefit Diana Morgan, would have received had she not been disabled. Accordingly, that portion of the trial court judgment awarding Michael Morgan his Sims portion (23%) of Diana Morgan’s TRSL benefits without | ^adjustment regarding the applicable multiplication factor after Diana Morgan’s 60th birthday (September 17, 2019) is affirmed.[16]
*1247 CONCLUSION
For all of the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to the appellant, Diana D. Morgan.
AFFIRMED.

. For additional background information, see also Morgan v. Morgan, 2005-1593 (La.App. 1 Cir. 6/21/06), 933 So.2d 257 (unpublished).

. Diana Morgan had a stroke in 1984, one week after the birth of her fourth child with Michael Morgan, and thereafter, she was confined to a wheelchair. See Morgan, 2013-0681 at p.10 n.14 and Morgan, 2005-1593 at p.5.

. Sims is the seminal case in Louisiana establishing the method of valuation and division of the community interest in a spouse’s pension plan. The Sims formula, 358 So.2d at 924, calculates a non-employee spouse’s interest in a spouse's employment benefit plan at the time the community property regime is terminated as the annuity or benefit multiplied by ½ multiplied by a fraction (the numerator of which is the portion of tjie pension or benefit attributable to creditable service during the existence of the community and the denominator of which is the pension or benefit attributable to total creditable service).

. See Anzalone v. Anzalone, 2007-1905 (La. App. 1 Cir. 11/18/08), 25 So.3d 836, 837 n. 1, writ granted and judgment reversed in part on other grounds, 2008-2981, 2008-2988 (La. 4/13/09), 6 So.3d 755.

. See La. R.S, 11:780(E) providing that ‘‘[i]f any disability retiree is restored to active service, his retirement allowance shall cease, he shall again become a member of the retirement system, and he shall contribute thereafter at the current rate in effect at the time he is restored to service, and if he contributes for *1238 at least three years, the period of time on disability shall be counted as accredited service for purposes of establishing retirement eligibility, but not for computation of benefits" and that “[a]ny prior service certificate on the basis of which his service was computed at the time of .his retirement shall be restored to full force and effect and, in addition, upon his subsequent retirement he shall be credited with all his service as a member.”

. See La. R.S. 11:779(B)(1) providing that ”[u]pon retirement for disability, a member shall receive a disability retirement allowance equal to two and one-half percent of his average compensation multiplied by his years of creditable service, but not more than fifty percent of his average compensation” and La. R.S. 11:779(B)(2) providing that “[i]n addition to the benefit provided by Paragraph' (1) of this Subsection, if a disability retiree has a minor child, the disability retiree shall be paid an added benefit equal to fifty percent of his disability benefit for so long as he has a minor child, provided that the total benefit payable to the disability retiree does not exceed seventy-five percent of his average compensation.”

. See La. R.S. 11:761(A)(1) providing that ”[a]ny person who became a member prior to July 1, 1999, may retire upon written application to the board of trustees, if at the time of application the member: (a) [h]as attained the age of sixty years; and (b) [h]as credit for five years of accredited service or has twenty years or more of creditable teaching service regardless of age” and La. R.S, 11:779(D) providing, in part, that "[a] disability retiree, upon attainment of the earliest age that he would have become eligible for a retirement benefit, if he had continued in service without further change in compensation, shall become a regular retiree using only his years of creditable service; however, his maximum benefit shall not be less than his disability benefit as provided by Paragraph (B)(1) of this Section and shall not include the benefit provided by Paragraph (B)(2) of this Section."

.See La. R.S. 11:780(A) providing in part that ”[o]nce each year during the first five years following any retirement of a member on a disability'retirement allowance and once in every three-year period thereafter, the board of trustees shall require any disability retiree ... who has not yet attained the age of sixty years ... to undergo a medical examination;” La. R.S, 31:780(B) providing that "[e]very disability retiree .., shall submit to the board of trustees ... a notarized annual earnings statement detailing his earned income from employment in the previous tax year;” and La. R.S. 11:780.1 which provides for the termination of a disability retiree’s disability benefits if the retiree “becomes employed in any employment in the field of education.”

. See La. R.S. 11:761(A)(1)(set forth in footnote 7) and La. R.S. 11:768(A)(1) providing, in part, that "[u]pon service retirement, a person who became a member prior to July 1, 1999, who retires on or after July 1, 1997, shall receive an annual benefit which provides a total allowance equal to two percent of his average earnable compensation multiplied by the number of years of creditable service, plus the sum of three hundred dollars."

. See Id.

. See Id.

. ½ (9 years service during the community -⅜-19½ years total service) = 23%; see footnote 3.

. The trial court's original judgment was signed on March 24, 2016; however, subsection 2 of that judgment contained a typographical error. Therefore, on May 4, 2016, by joint motion of the parties and pursuant to La. C.C.P. art. 1951, the original judgment was amended to correct that clerical error.

. See La. C.C. art. 2338, which sets forth what comprises community property and La. C.C. art. 2341, which sets forth what comprises the separate property of a spouse.

. Michael Morgan also contends that he was entitled to the Sims portion of Diana Morgan’s retirement benefits based on tire 2½% multiplication factor (rather than the 2% multiplication factor) retroactive to Diana Morgan’s retirement in December 2011, and that the trial court’s judgment deferring his entitlement to the enhanced multiplication factor was erroneous and should be reversed. However, Michael Morgan neither appealed the judgment of the trial court nor answered the appeal by Diana Morgan. Therefore, the propriety of the trial court’s ruling in this regard is not properly before us and will not be addressed herein.

. Since Michael Morgan did not separately appeal the judgment of the trial court or file an answer to Diana Morgan’s appeal, we decline to address whether Michael Morgan was *1247 entitled to the Sims portion of Diana Morgan’s retirement benefits based on the 2½% multiplication factor retroactive to Diana Morgan’s retirement in December 2011. See footnote 15.